[Crim. No. 2369.   Third Dist.   Apr. 28, 1953.]

THE PEOPLE, Respondent, v. THOMAS B. LEEPER, Appellant.

E. R. Vaughn for Appellant.

Edmund G. Brown, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—The grand jury of Yolo County found an indictment against appellant and three codefendants, Louise E. Mecum, Bert Yost and Edward R. Greene. Count I of the indictment charged conspiracy to commit grand theft in that the defendants during the period between August, 1948, and October, 1950, conspired to obtain property and money of the estate of one Frank Weber by making false and fraudulent representations and making, uttering, publishing and passing as true and genuine a certain false and counterfeit document, to wit, a carbon copy of an alleged executed will. Count II charged the crime of perjury alleged to have been committed by the several defendants on varying dates in that they gave certain false testimony. All of the defendants pleaded not guilty to all charges. The case was called for trial on January 15, 1952. Defendant Greene not appearing, his bail was forfeited and a bench warrant issued for his arrest. Before the *voir dire* examination of jurors began, John C. Harris, Esquire, who had been acting as counsel for Leeper and Mecum, was, at his request, relieved of his representation of Mecum and the public defender was appointed to represent her. Thereupon, with leave of court, she withdrew her plea of not guilty to the charge of perjury and pleaded guilty thereto. The count charging conspiracy was dismissed as to her. Prior to trial defendant Yost had withdrawn his plea of not guilty and entered a plea of guilty as to a charge of perjury and as to him also the conspiracy charge had been dismissed. Both Mecum and Yost testified for the prosecution during the trial which went forward as to appellant Leeper alone. After a trial consuming 10 days, the jury returned verdicts of guilty

against appellant on both counts of the indictment. Motion for new trial was made and denied and the court sentenced appellant to serve consecutive terms as to each conviction. This appeal followed.

Appellant assigns the following errors: 1. That he was not accorded a fair and an impartial trial; 2. That the evidence of the accomplices Mecum and Yost was not corroborated; 3. That the conspiracy was not established by competent evidence; and, 4. That the perjury was not proved by required evidence.

In support of his assignment that his trial was unfair, appellant urges that when his case was called for trial, and throughout the trial, he was too ill to be tried; and that, though himself an attorney, he was compelled to go through the trial without the assistance of competent counsel. In factual support he shows the following: The record discloses that appellant moved the court for a continuance upon the ground of his illness, which motion was denied; that he moved for a change of venue, which was denied; that when it appeared at the beginning of the trial that defendant Greene would not be present, appellant moved for a continuance upon that ground, which motion was denied; that when Greene did not appear the court in the presence of the panel ordered his bail forfeited and that a bench warrant issue for his arrest, whereupon appellant again moved for a change of venue, which motion was denied; that on the second day of the trial appellant again renewed his motion for a continuance on the ground of his illness, which motion was denied, the court stating it found the supporting affidavit of an urologist insufficient, whereupon appellant asked that he be examined by a local physician skilled in urology, and that he be granted continuance sufficient to subpoena the affiant urologist whose affidavit the court declared insufficient. The requests were denied. On the fourth day of the trial appellant again moved for a change of venue and the motion was denied. On the eighth day of the trial and because appellant indicated he felt unable to properly conduct his defense, the court offered to appoint the public defender of Yolo County to assist. A week-end continuance was granted to enable appellant to consult with the public defender and on the following Monday the public defender asked to be relieved principally upon the ground that he objected to being required to defend a defendant who had means to employ counsel. The court granted the public defender's request and

the trial proceeded. At the same time John C. Harris, Esquire, who appeared throughout as counsel for appellant, asked permission to withdraw upon the ground that he was in material disagreement with appellant as to how the case should be conducted and felt he could not conscientiously go forward. The prosecution objected and the court refused to grant Mr. Harris's request. Having set forth the foregoing, appellant contents himself as to discussion by citing the provisions of the California Constitution concerning the right to counsel; Penal Code, section 866, subdivision (2), containing a provision to the same effect; and case authority for the proposition that the right to counsel extends to every person accused of crime whether or not he is himself a lawyer. Respondent does not quarrel with these statements of the law but insists the facts shown by the record justify the actions of the court complained of. We have read the record carefully and have concluded that this assignment of error cannot be sustained.

Appellant charges that his counsel was incompetent, but he points to nothing in the record that supports this charge save to say that his counsel was young and inexperienced. This may be, but our examination of the record shows that insofar as appellant allowed him to participate in the trial his counsel performed creditably and competently. He conducted the *voir dire* examination and the range of his questions indicated a thorough knowledge and appreciation as to what ought to be inquired into for the protection of appellant in the selection of the jury. He developed a number of grounds for challenge for cause which he made and which were allowed by the court. We can see no fault in his work in this regard. From that point on, however, he was permitted to have little share in the conduct of the trial, appellant himself taking over almost exclusively and conducting his own defense. Appellant appears to have industriously limited his counsel's participation to the *voir dire* examination and to the gathering of witnesses and the like, save for the examination of one or two minor witnesses. It further appears that during the months that elapsed between the pleas and the trial appellant negotiated with at least two attorneys of his own selection who were experienced in criminal trial work, but in the end did not engage either because he deemed their demands for compensation unreasonable. It does not appear their demands could not have been met by him and in view of the probable length of the trial and the amount of time to be consumed in preparation therefor we do not think that the demands of these

attorneys were so unreasonable as to justify appellant's failing to engage either when, for all the record shows, he was financially able to do so. Moreover, the record shows that appellant, an experienced attorney in his own right, did conduct his defense with competence and his argument of his cause was not only extensive but was well organized and leaves the reader with the impression that all that could have been said, the testimony considered, was said and well said. We think the verdicts were in nowise the product of a poorly-handled defense, but rather the result of most persuasive testimony on the part of the prosecution, not the least of which was the direct testimony of the accomplices as to both the conspiracy and the perjury. ▮ Appellant further complains that his trial was unfair because he was too ill to go through with it. The record shows that he was suffering from a prostatic condition which required surgery for its correction, but the most that can be said is that there was a factual issue as to whether or not his condition was acute enough to make it necessary that he undergo surgery before rather than after the trial; and as to whether the presence of his disease would interfere with his defense and with his own conduct thereof, to an extent that required his requested postponements. The record discloses a situation where the granting or denial of appellant's various requests for continuance were within the discretion of the court and no abuse of that discretion appears in the record. (*People* v. *Nolan*, 126 Cal.App. 623 [14 P.2d 880] ; *People* v. *Fitzgerald*, 14 Cal.App.2d 180 [58 P.2d 718].) While appellant cites the denial of his motions for continuance, and the denial of his various motions for change of venue, he makes no supporting argument that the court erred and cites no authorities. Our own search of the record indicates that his motions based on these grounds were justifiably denied.

Appellant contends that the evidence of the accomplices Mecum and Yost was not corroborated. ▮▮ This assignment requires a brief statement of the prosecution's testimony which follows: Frank Weber died in November, 1949. For more than 30 years appellant had been his attorney, to the exclusion of all others until May, 1949, during which month another attorney prepared and attended the execution of a will which disposed of an estate of around $600,000 in value. Appellant was not a beneficiary under this will. Prior thereto and on August 31, 1948, appellant prepared and Weber executed a will in which likewise appellant was not a beneficiary. While that will was being prepared, however, ap-

pellant approached one Willie Beltrami, general handyman and nurse to Weber who then and thereafter up to his death needed constant attention, with a suggestion that although Beltrami was a beneficiary in a substantial amount in the will being prepared, nevertheless both he and appellant were deserving of a large share of Weber's estate when he should die; that Weber had no heirs (this was true) and that their sharing in the property that Weber would leave could be brought about by taking the last page of the will then about to be executed and thereafter drawing a false will, fitting the last and signature page of the true will thereto and probating it as the will of Weber. In the false part of the will a substantial share of the property would appear to have been bequeathed and devised to appellant and Beltrami. Beltrami refused to join this plan. After the May will, prepared by another attorney, had been executed by Weber, from which will Beltrami would substantially benefit, but from which appellant would take nothing, and just prior to July 20, 1949, a proposed Weber will was drafted in part through the efforts of appellant, Louise Mecum doing the secretarial and stenographic work. We will refer to this document as the July will. This proposed will provided for appellant bequests aggregating some $200,000 in value. On July 20th, Mecum, Yost and Greene gathered in the office of an attorney sharing a common reception room with appellant, and there and in the absence of Weber these three and the attorney purported to sign the will as witnesses. Mecum testified that when later she questioned the efficacy of this procedure, appellant replied that he would obtain Weber's signature thereafter. A copy of this proposed will, however, was filled out as though the original had been signed by Weber and by the subscribing witnesses. After Weber's death the May will was proposed for probate and appellant filed a copy of the purported July will alleging in his petition for probate that the original had been duly executed by decedent on July 20, 1949, and had been in existence after his death but had since been lost. A contest was filed to this petition for probate. During the contest Mecum, Yost and Greene testified that on July 20, 1949, they three had in the presence of Weber and at his request and in the presence of each other and of the fourth subscribing witness, subscribed a true and genuine will then bearing the signature of Weber. ▉ Appellant also, as a witness in the contest, testified that after Weber's death he had seen and had in his possession the original will of July

20th bearing the signature of Weber which he knew and of which the filed copy was a true copy in all particulars. During the trial herein there was testimony by Beltrami to the effect that he was on the 20th of July, 1949, in constant attendance upon Weber and that at no time did Weber go to the office of the attorney wherein the subscribing witnesses testified that he executed the will. Other witnesses testified to Weber's presence at different times of that day and the general effect of their testimony was to support Beltrami's testimony that Weber could not have executed the proposed will on July 20th. It was shown that one or more bequests in that will were made to persons whom Weber knew to be dead prior to its execution. There was also evidence which we need not detail tending to show that the July will was not such as Weber would have executed. The accomplices Mecum and Yost testified herein that Weber did not sign the will and was not present when they pretended to sign as subscribing witnesses and that their testimony to the contrary given in the contest had been false. Yost testified that both before and after the occurrences on July 20th he was assured by appellant that he, Yost, would receive a share of appellant's interest when appellant should have succeeded in obtaining distribution.

Appellant contends that the testimony of the accomplices Mecum and Yost is the only testimony in the record that establishes the corpus delicti of the conspiracy and connects Leeper therewith. The other evidence, he says, while it tends to show that Weber did not execute the July will, nevertheless fails to corroborate the accomplices' testimony as to Leeper's part in the conspiracy. This contention cannot be sustained. It is hardly necessary to labor the proposition in view of the testimony we have related. Generally, proof of conspiracy must be largely, if not entirely, circumstantial. Beltrami's testimony as to appellant's proposal to him, while not showing any conspiracy at that time, nevertheless tends to establish an existing intent on the part of appellant to wrongfully obtain a share in Weber's estate through a false will. The testimony of Beltrami and the other witnesses to the effect that Weber did not sign the July 20th will warrants the inference that when appellant proposed probate of that will as one properly executed by Weber and thereafter testified that he saw the signature of Weber upon the original his actions were in furtherance of the very conspiracy to which Yost directly testified. The proof of the conspiracy,

of course, was adequate, Yost's testimony and that of Mecum being sufficient for that purpose. Since they were accomplices corroboration was necessary, but it is easily found in the related testimony. ■ Corroboration need do no more than to connect "the defendant with the commission of the crime in such a way as reasonably to satisfy the fact-finding body that the accomplice is telling the truth." (*People* v. *Griffin,* 98 Cal.App.2d 1, 26 [219 P.2d 519].)

■ Appellant contends that perjury was not proved by the required evidence. This assignment is difficult to understand in view of the facts we have related. True, under section 1103a, perjury must be proved by testimony of two witnesses or one witness and corroborating circumstances, but that test is amply met by this record. The argument in support of this assignment, however, goes along this line: Even if Weber did not make a will on July 20th Leeper might have believed that he saw such a will. But Leeper knew Weber's signature and said he saw it on the will. There is no room here to argue that appellant just thought he saw such a will. Appellant says the only testimony as to the preparation of such a will was given by the accomplices and they said the attorney in whose office they gathered prepared the document and that appellant was not taking any part. But Mecum testified that appellant took part in the preparation of the purported will and Yost said that Leeper asked him to witness the will. Says appellant, they were not corroborated in these statements. But accomplices need not be corroborated in everything to which they testify. (*People* v. *Griffin, supra.*)

We find no error in the record. The judgment and the order denying new trial are therefore affirmed.

Peek, J., and Schottky, J., concurred.