FRANK WOJCULEWICZ *v.* GEORGE A. CUMMINGS,
WARDEN OF CONNECTICUT STATE PRISON*

WYNNE, C. J., BALDWIN, DALY, KING and MURPHY, Js.

---

\* For other phases of this matter, see *State* v. *Wojculewicz,* 140
Conn. 487, 101 A.2d 495; *Wojculewicz* v. *State,* 142 Conn. 676,
117 A.2d 439; *State* v. *Wojculewicz,* 143 Conn. 118, 119 A.2d 913;
*Wojculewicz* v. *Cummings,* 143 Conn. 624, 124 A.2d 886.

Argued December 10, 1957—decided January 14, 1958

*Reinhart L. Gideon,* special public defender, for the appellant (plaintiff).

*John D. LaBelle,* assistant state's attorney, with whom, on the brief, was *Albert S. Bill,* state's attorney, for the appellee (defendant).

BALDWIN, J. The plaintiff applied to the Superior Court for a writ of habeas corpus directed to the warden of the state prison. The court issued the writ and the plaintiff was brought before the court. After a hearing on the merits, the court rendered judgment for the defendant and the plaintiff has appealed.

The return alleged in substance that the warden was holding the plaintiff upon a mittimus which recited that he had been indicted on two counts for murder in the first degree, that he had been presented to the Superior Court and placed on trial before a jury, that a verdict of guilty on both counts had been returned and accepted by the court, and

that judgment had been rendered imposing the death penalty according to the statutes of this state. A brief history of the facts and the legal proceedings as they appear in the warden's return and of record is necessary for the full presentation of the issues involved on this appeal.

On November 5, 1951, the plaintiff was caught in the act of perpetrating an armed robbery at the office of the A.Y.O. Packing Company in New Britain. He had secured some bags of money and was backing out of the office, still covering its occupants with a revolver, when Sergeant William J. Grabeck of the New Britain police arrived, placed a gun at the plaintiff's back and ordered him to drop his revolver. At this instant William Otipka entered the building and stepped to the side of the sergeant. The plaintiff wheeled about, and a number of shots were fired in rapid succession. Otipka fell, mortally wounded. Grabeck staggered to the street, fell, and died shortly after at the hospital. The plaintiff, also wounded, lay on the floor. Officer Wojtusik, who then entered the building, saw the plaintiff reaching for his gun where it lay on the floor, shot twice at him, handcuffed him and took him into custody. A ballistic examination of the three guns involved indicated that the bullets which had killed Grabeck and Otipka had come from the plaintiff's revolver. At the trial, which began on March 4, 1952, the plaintiff was represented by the public defender. The plaintiff did not take the stand, but the claim was made in his behalf that Otipka had wrested the gun from the plaintiff and in the melee had fired the fatal shots. The plaintiff appealed from the judgment entered on the jury's verdict of guilty. That judgment was sustained on appeal. *State* v. *Wojculewicz,* 140 Conn. 487, 101 A.2d 495.

On February 24, 1954, the plaintiff, through the public defender as his counsel, filed in the Superior Court a petition for a new trial. He alleged that while his appeal was pending he had become insane and had remained so until after the appeal had been argued at the October term in 1953; that his insanity had been discovered by the prison authorities in June, 1953, but was not disclosed to the public defender or to the court; and that because of this condition he had been deprived of his constitutional right to advise and consult with his counsel concerning the appeal. The trial court dismissed his petition, and this judgment was sustained on appeal because the grounds stated for a new trial did not fall within the statute granting one. *Wojculewicz* v. *State,* 142 Conn. 676, 117 A.2d 439; General Statutes § 8013. We pointed out in the opinion in that case (p. 678) that the plaintiff's grievance was not that his constitutional rights had been violated by the conduct of the trial but that the argument upon the appeal should have been stayed pending his recovery from insanity. We pointed out also (p. 679) that under the rules of court the time for filing a motion for reargument had passed (Practice Book § 441) and that reargument would be permissible only if the judgment of this court could be voided.

Thereafter, the plaintiff filed in this court a writ labeled "Petition for Writ of Error Coram Nobis." We were not called upon to decide whether such a writ could issue, because the state's attorney and the public defender stipulated that the judgment upon appeal might be vacated and the appeal reargued. See *State* v. *Wojculewicz,* 143 Conn. 118, 120, 119 A.2d 913. The plaintiff discharged the public defender and reargued his appeal in person. He claimed that (1) he should not have been brought to trial be-

cause the drugs given to him by the physicians to alleviate his pain so deranged him that he could not consult intelligently with his counsel; (2) the trial court, during the course of the trial, should have granted to him the continuance he requested from Friday until the following Tuesday, when court was to resume following the week-end adjournment; and (3) he was denied effective representation by counsel as guaranteed by the state and federal constitutions. A wide latitude was accorded to him on his argument. We reconsidered the entire appeal and found no error. *State* v. *Wojculewicz,* 143 Conn. 118, 119 A.2d 913.

The plaintiff, a special public defender having been appointed to represent him, then applied for a writ of habeas corpus. The trial court sustained a demurrer to the plaintiff's answer to the warden's return and rendered judgment for the defendant. On appeal, we remanded the case to the trial court for a hearing upon the facts. *Wojculewicz* v. *Cummings,* 143 Conn. 624, 633, 124 A.2d 886. The present appeal is from a judgment for the defendant after a full hearing.

The facts found by the trial court may be stated in summary as follows: In the fusilade at the scene of the robbery on November 5, 1951, the plaintiff suffered gunshot wounds, one of which transected his spinal cord and injured his kidneys and spleen. The lower part of his body, below the umbilicus, was paralyzed. He lost control of his bowels and bladder, and his weight dropped below 100 pounds. He sustained no injury to his brain. He had been brought from the scene of the robbery to the New Britain Hospital in shock. After an examination an operation was performed, his spleen was removed, his torn kidney was sutured, and the ruptured inter-

costal arteries and blood vessels in his chest were tied. A spinal tap was done and, later, bullets were removed from his chest and arm. He remained in the New Britain Hospital until December 27, 1951, when he was taken to the McCook Memorial Hospital in Hartford, where he was kept until his trial ended on March 18, 1952. On January 8, 1952, a physical and neurological examination revealed that he was not suffering from any psychiatric abnormality and that the severing of his spinal cord had not affected his mental capabilities. On February 20, 1952, a second examination, which lasted most of the forenoon and was made by two psychiatrists, showed the plaintiff to be a man of average intelligence who understood the nature of the charges against him and was not suffering from any mental disorders which affected his responsibility. The plaintiff did not make any complaint of pain or any request that the interview be postponed. He gave a complete and detailed history of his life and activities up to the time of the crime charged. It was determined that he was mentally and physically able to maintain his defense in court. While at the McCook Memorial Hospital, he was directly under the care of the senior resident in surgery. The plaintiff was allowed to confer with his counsel whenever he requested. All the medication administered to him was recorded in a hospital chart except three one-half-grain codeine pills and three five-grain aspirin tablets which were given to a policeman who accompanied the plaintiff to the courthouse on March 10, 1952. Nothing in the hospital records reveals whether the plaintiff received this medication, and there is no other order in these records reciting the administration of medication to the plaintiff during the trial. The plaintiff expressed a wish, and made an attempt, to commit suicide.

The plaintiff's trial began on the 4th day of March, 1952, and continued until the 18th. Each day he was brought on a stretcher from the hospital to the court-room in the County Building at Hartford. During court sessions the stretcher, with the plaintiff lying on his back on it, was placed in front of the jury. The plaintiff was well cared for by attendants. His bladder and bowel requirements were served during recesses in a room adjoining the courtroom. On no single day did the amount of drugs given to him exceed three one-half-grain codeine pills and three five-grain aspirin tablets, which are relatively mild dosages. During the trial the plaintiff suffered considerable pain and discomfort, but he made no complaints regarding the care he was receiving. During recesses in the trial and at other times he was visited by friends and relatives, including his wife, his mother and his father-in-law.

In the course of the trial, on Friday, March 14, 1952, at noon, after a recess, the plaintiff's counsel made an oral motion that court be adjourned until the next court day, which was the following Tuesday, claiming that the plaintiff was in such pain that he could not continue with the trial. The physician who had the plaintiff under his care examined the plaintiff and reported his condition to be such that he could continue to stand trial. The motion was denied. Shortly thereafter, the trial was recessed until the following Tuesday. The denial of this motion was considered and disposed of as a ground of appeal in *State* v. *Wojculewicz,* 143 Conn. 118, 122, 119 A.2d 913.

Throughout the trial the plaintiff was alert, assisted counsel in the selection of the jury, and frequently and continuously conferred with him during the trial. The plaintiff recalls vividly the events of

the trial, where he was in the courtroom, where he was taken and who visited him during recesses, and who took care of him. He instructed his counsel privately on March 18, 1952, not to offer any evidence in his behalf. He himself did not testify. The fact that the plaintiff lay on his back on a stretcher before the jury during the trial did not cause him degradation or seriously interfere with his defense. He lay on a stretcher during the hearing of the present habeas corpus proceeding. He was not prevented mentally or physically from making his defense at his trial. None of the persons who visited him at the courthouse during the trial appeared at the habeas corpus hearing to testify that his physical and mental condition at the time of his trial was as he claims. At no time during the trial, except on Friday, March 14, as previously noted, did the plaintiff make any objection to the court that he was unable to proceed because of pain or physical discomfort. The trial court in the present proceeding concluded that the plaintiff at his trial was not so mentally distraught as to be unable to understand the nature of the proceedings against him and to make his defense, and that he had a fair trial.

The plaintiff's claims of error are not directed to the subordinate facts in the finding but to the conclusions which the court has drawn from them. The plaintiff asserts that because of his mental and physical condition, which was due to the injuries from which he was suffering and the medication which he was required to take to relieve his pain and discomfort, and because it was necessary for him to lie on a stretcher before the jury without control of his bladder and bowels, he was denied a fair trial in violation of the due process provisions of the federal and state constitutions. U.S. Const. Amend. XIV § 1; Conn.

Const. Art. I § 9. The first time the plaintiff raised this claim was on the reargument of his appeal in this court on December 8, 1955, three years and nine months after the original trial. This fact, as pointed out by the state, is significant in considering the sincerity of his claims. But it was a fact for the trial court to weigh, and it is of consequence on this appeal only so far as it may tend to support the conclusions reached by the court. We do not consider it in any sense as a waiver or an estoppel.

A fair trial is implicit in the term "due process of law." A denial of due process divests the trial court of jurisdiction and is properly raised upon an application for a writ of habeas corpus. *Wojculewicz* v. *Cummings,* 143 Conn. 624, 629, 124 A.2d 886. The requirements of due process are met in the trial of a person accused of crime if he has been given the benefit of a fair and impartial trial in accordance with the settled course of judicial proceedings in this state. *State* v. *Palko,* 122 Conn. 529, 541, 191 A. 320, aff'd, *Palko* v. *Connecticut,* 302 U.S. 319, 58 S. Ct. 149, 82 L. Ed. 288; *Proctor* v. *Sachner,* 143 Conn. 9, 17, 118 A.2d 621. A fair trial is one conducted in all material things in substantial conformity to law, before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm. *Wojculewicz* v. *Cummings,* supra, 632; *Snyder* v. *Massachusetts,* 291 U.S. 97, 116, 54 S. Ct. 330, 78 L. Ed. 674; *Sunderland* v. *United States,* 19 F.2d 202, 216; *State* v. *Grayson,* 239 N.C. 453, 461, 80 S.E.2d 387; Conn. Const. Art. I § 9. This rule carries the obvious implication that no accused should be put to trial when he is insane or his mental capabilities are so affected by drugs or physical pain that he cannot maintain his defense. *People* v. *Berling,* 115 Cal. App. 2d 255, 267, 251 P.2d 1017; *Sanders* v. *Allen,* 100 F.2d 717, 720.

The plaintiff's reasons for his claim that he was denied a fair trial fall into three general categories, and they are so treated in his brief. First, there are his severe and disabling injuries. He sustained these on November 5, 1951. The trial began approximately four months later, on March 4, 1952. The trial court has found that psychiatric and physical examinations were made on January 8, 1952, and again on February 28, 1952. In the opinion of medical experts, whose competency is unchallenged, the plaintiff was not suffering from any mental or physical disabilities which would prevent him from standing trial. No request for an adjournment or continuance was made although, as we have noted in a prior opinion, the plaintiff was represented by competent counsel. *State* v. *Wojculewicz*, 143 Conn. 118, 119, 123, 119 A.2d 913.

Second, the plaintiff asserts that his intellect was clouded by drugs administered to relieve his pain. This feature of the case was fully reviewed, as the meticulous care given to details in the trial court's finding abundantly shows. At no time, the court found, were dosages of drugs to relieve the plaintiff's pain and discomfort administered in sufficient quantities to becloud his perceptions.

Third, the plaintiff complains because he was placed in front of the jury lying on a stretcher without control of his bladder and bowels. This, he charges, degraded and humiliated him. As to the care for his physical discomforts resulting from the lack of bladder and bowel control, the trial court found that his needs were well cared for by the attendants and that he made no complaint. Further, the court found that these infirmities did not interfere with the plaintiff's ability to conduct his defense. The placing of the stretcher in front of the jury was

not harmful or improper. The plaintiff had a right to be where he could hear and see the witnesses and the jury and where they could see him. *State* v. *Mannion,* 19 Utah 505, 514, 57 P. 542; *People* v. *Williams,* 32 Cal. 2d 78, 82, 195 P.2d 393, cert. denied, 335 U.S. 835, 69 S. Ct. 25, 93 L. Ed. 387; *State* v. *Weldon,* 91 S.C. 29, 40, 74 S.E. 43. The control of the proceedings in a courtroom is necessarily within the discretion of the trial court. *Antel* v. *Poli,* 100 Conn. 64, 69, 123 A. 272. No complaint was made by the plaintiff or his counsel concerning his position in the courtroom during the trial. We take judicial notice of the arrangement of the witness and jury boxes in our courtrooms and assume that the accused was placed as he was to enable him to hear the witnesses and to see and be seen, which was his right. The conclusion that he was not prejudiced in this regard in conducting his defense is a proper one.

The plaintiff contends that if any one of the foregoing claims might not of itself be sufficient to prevent a fair trial, their cumulative effect when considered together rendered him unfit to stand trial. Where the accused, as in this case, is severely injured in the perpetration of the crime for which he is charged, the fixing of the time for his trial requires the exercise of a sound discretion, in the first instance by the state's attorney and counsel for the accused, and, ultimately, by the trial court. Under our constitution an accused is entitled to a speedy trial. Conn. Const. Art. I § 9. This means that the state must proceed with the prosecution without undue delay. The finding of the trial court discloses that the plaintiff received prompt and competent medical and surgical treatment for his injuries and that he was examined before trial on two different occasions, some considerable time apart, to determine whether

his condition was such that he could stand trial. When the date for the trial was fixed, neither the plaintiff nor his counsel made any objection to the court or asked for any adjournment, so far as the record discloses. Because of the nature of the plaintiff's injuries, the probability of his recovery or of his further improvement was remote. See *Quattlebaum* v. *State,* 119 Ga. 433, 435, 46 S.E. 677; *Eastland* v. *State,* 223 Miss. 195, 205, 78 So. 2d 127; *Nix* v. *State,* 20 Okla. Crim. 373, 378, 202 P. 1042.

The question whether a criminal trial should be postponed or continued because of the mental or physical condition of the accused rests in the sound discretion of the trial court. Most of the cases deal with the review of the court's action on a motion. The issue is fundamentally the same, whether it arises on a motion or on a writ of habeas corpus as in the case at bar. An abuse of discretion in denying a motion for a continuance could result in forcing the accused to trial to the prejudice of his right to a fair trial. The cases cited in the footnote sustain the trial court's denial of such a motion.[1] Had the plaintiff made a motion for a postponement, the court would have acted within its legal discretion in denying it. In *Felts* v. *Murphy,* 201 U.S. 123, 26 S. Ct.

---

[1] *Ellison* v. *Commonwealth,* 195 Ky. 370, 378, 242 S.W. 368 (bullet wounds); *Commonwealth* v. *Strantz,* 328 Pa. 33, 44, 195 A. 75 (accused in wheelchair); *Shetsky* v. *State,* 290 P.2d 149, 155 (Okla. Crim.) (heart condition, accused on cot); *State* v. *Jacob,* 131 Wash. 490, 230 P. 647 (use of narcotics); *Atkinson* v. *State,* 223 Ark. 538, 267 S.W.2d 304 (impaired reasoning power); *Honda* v. *People,* 111 Colo. 279, 287, 141 P.2d 178; *Wells* v. *State,* 210 Ga. 422, 423, 80 S.E.2d 153; *Griffin* v. *State,* 208 Ga. 746, 750, 69 S.E.2d 192 (epilepsy); *Redwine* v. *State,* 36 Ala. App. 560, 563, 61 So. 2d 715 (defendant in wheelchair); *Buchanan* v. *State,* 214 Ark. 835, 836, 218 S.W.2d 700 (paralytic); *People* v. *Leeper,* 117 Cal. App. 2d 462, 466, 256 P.2d 389 (physical illness); *Wellman* v. *United States,* 227 F.2d 757, 775.

366, 50 L. Ed. 689, the accused, charged with murder, was almost totally deaf. Upon an application for a writ of habeas corpus, he claimed that he had been denied a fair trial because the testimony of the witnesses had not been repeated to him. The Supreme Court of the United States sustained a judgment denying the writ. See *State* v. *Rubaka*, 82 Conn. 59, 61, 72 A. 566.

The determination whether an accused has been denied a fair trial because of his mental and physical condition rests, in a case such as this, upon factual determinations and the conclusions to be drawn therefrom. The physical infirmities of the plaintiff did not prevent him from conferring with his counsel before or during his trial. He was alert and remembered all of the details of the trial. His condition did not hinder him from securing witnesses or from testifying in his own behalf, which he freely decided not to do. The prospect that his condition would improve was extremely remote. His physical infirmities, although they were inflicted while he was committing an armed robbery, were such as could arouse the sympathy of the jury rather than work against him. The trial court's conclusion that he had been accorded a fair trial was reasonably and properly drawn from all the facts.

There is no error.

In this opinion the other judges concurred.