[Crim. No. 6577.   First Dist., Div. Two.   Aug. 28, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. BENTORA JOSEPH AUGUSTINE, Defendant and Appellant.

Jones, Jenkins & Warden and Donald Warden for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and John T. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant appeals following jury conviction on May 18, 1967 of grand theft (Pen. Code, § 484). The sole issue on appeal is whether the trial court abused its discretion in ordering the trial to proceed after appellant's counsel announced that he had become ill the night before the trial was scheduled to commence and was unable to proceed.

*Facts*: On February 14, 1967, at the request of appellant, the court appointed J. Cameron Snell to represent appellant. A plea of not guilty was entered and a jury trial was set for April 4, the appellant not having waived the statutory time for trial. (Pen. Code, § 1382, subd. 2.)

On April 4, during the impanelment of the jury, the appellant addressed the court as follows: "Say, your Honor, I would like to know if I could have a word with the Court?" Proceedings then took place in chambers, out of the presence of the jury.

Appellant stated that he was dissatisfied with Snell's representation of him in another action in which he had been convicted by jury of robbery.[1] He said to the court, "I have my people now trying to obtain the services of an attorney for me and they are working with the N.A.A.C.P., because I definitely don't want to be represented by Mr. Snell any more."

---

[1]Appellant was sentenced to state prison in this action and the judgment of conviction therein has become final. Appellant was likewise sentenced to state prison in the instant action, such sentence to run concurrently with the robbery sentence.

Considerable discussion ensued but the following excerpts from the transcript indicate the tenor thereof and the court's ruling: "THE COURT: Let me ask you this: What do you want to do? THE DEFENDANT: Like I said, I want to waive time and give my mother a chance to get my own attorney. THE COURT: How much time do you want? You can have as much time as you want. Answer my question; how much time do you want? THE DEFENDANT: At least a couple of weeks. THE COURT: A couple of weeks, and do you waive time. THE DEFENDANT: I have been waiving time on the grand theft. THE COURT: What are you going to do, you are going to get your own private attorney? THE DEFENDANT: My own, one that I am paying. . . . THE COURT: When you say you want a couple of weeks, now if we continue this case for two weeks, when am I going to know whether you are going to have an attorney? The two weeks come up and you come over here and you haven't got an attorney, what are we going to do? . . . THE DEFENDANT: But, I would like to get an attorney and get a change of venue out of this county. . . . THE COURT: On April the 11th I want to know whether you are going to have an attorney. If not, I am going to appoint one and we are going to trial two weeks from today, that will be April the 18th. I want you to understand that now simply because you want to do this we are going to grant the continuance. . . . MR. SNELL: Your Honor, I would like to tell Mrs. Abara [appellant's mother] that if she will have counsel contact me I will see that he has all my records and this would undoubtedly be of great help to him. THE COURT: Have your attorney contact Mr. Snell."

The court thereupon dismissed the jury panel.

The following excerpts are from the transcript of the proceedings held on April 13, at which time appellant appeared before the court without counsel: "[THE COURT:] And accepting the representation of the defendant, Bentora Joseph Augustine, the Court told him to obtain counsel by Monday, April 10th, 1967, counsel to contact the Court on or before that date. In the event that counsel has not been obtained, the defendant was advised that the Court would obtain new and different counsel for him, the defendant stating that he no longer wished to be represented by Mr. Snell any further.

"The matter has been calendared again for hearing on the Court's own motion in order that we can ascertain whether the matter is prepared to proceed to trial as set, on April 18th, 1967, this being the 13th and trial being but five days away. Do you understand what I have been saying, Mr. Augustine?

THE DEFENDANT: Yes. THE COURT: Do you have an attorney?
THE DEFENDANT: Yes. THE COURT: Who is your attorney?
THE DEFENDANT: Mr. Donald Warden. THE COURT: Donald
Warden? THE DEFENDANT: Yes. THE COURT: Have you seen
him? THE DEFENDANT: No, I haven't seen him. THE COURT:
Do you have an appointment to meet with him? THE DEFEND-
ANT: My mother went to see him—I'm in custody—and this is
what she—she was supposed to contact Judge Randall. I saw
her Sunday, and she said she was going to tell him she had an
attorney. I believe she already told him what she told me.
THE COURT: Do you know what this attorney's address is?
THE DEFENDANT: Attorney Donald Warden in Oakland.''

Despite repeated calls to the law offices of Mr. Warden, the
court was unable to contact him or ascertain from his secre-
tary whether he was representing appellant. The prosecutor
expressed his concern about the expense of assembling the
witnesses and calling in a panel of jurors.

''THE COURT: The Court is concerned about it too. The
defendant has been afforded ample opportunity to retain
counsel. It does not rest with us to act as intermediaries for
his counsel. The court just called the Oakland office of Jones,
Reed and Warden. Mr. Donald Warden in that office was not
available. His secretary refused to divulge his whereabouts
and said she knew nothing about any Bentora Augustine or
any representation of him by Mr. Donald Warden, if that is
the gentleman with whom we are concerned. . . . Well, it
would appear that someone is being dilatory and flaunting the
process of the Court herein. The case should have been tried
on April 4th when it came on, the date set for it. Are you
prepared to go to trial on April 18th, Mr. Augustine? THE
DEFENDANT: April 18th, yes. . . .

''THE COURT: Gentlemen, the San Francisco office of attor-
ney Donald Warden likewise has no knowledge of his where-
abouts or accessibility or if he is purported to be representing
the defendant, Mr. Augustine. The Court has also contacted
his formerly assigned counsel herein, Cameron Snell, who
indicated that he gave his card to Mr. Augustine's mother
and indicated he would be glad to turn over all information
and files in his possession to any attorney she would have
contact him, but he has had no word. The Court, therefore,
proposes to put this matter over until this afternoon. We left
word with Mr. Warden's office for him to contact us immedi-
ately. The Court will assign counsel to represent Mr. Augus-
tine this afternoon in order that the matter may proceed to

trial if there has been no word that he is, in fact, represented by any attorney named Warden or anyone else. . . .

"THE COURT: Let the record reflect again that at 2:10 this afternoon the Court is reconvening with defendant and Deputy District Attorney in the case of the People versus Bentora Joseph Augustine, 5077, and in the interim since our sessions this morning repeated calls to the two law offices with one Donald Warden have been unavailing. No calls have been returned despite the Court's demand for return calls by the office. And the secretary for each office indicates no knowledge or awareness of any representation by any member of the office of Bentora Joseph Augustine. The defendant, heretofore, had indicated to the Court his inability to employ counsel and requested assigned counsel to defend him at the commencement of trial on April 4th, wherein, following, I believe —while this record does not reflect it—conviction of defendant in another case where he was represented by Attorney J. Cameron Snell, Mr. Augustine, apparently, expressed dissatisfaction with said counsel and desired not to proceed with Mr. Snell representing him. Is that correct, Mr. Augustine? THE DEFENDANT: Yes; that's correct. THE COURT: The case is coming up for trial, and it appears to the Court satisfactorily today that you are not being represented or, at any rate, not being effectively represented by any attorney at the present time. Accordingly, the Court is prepared to assign other counsel to meet with you today and represent you henceforth in this case. Is that agreeable with you? THE DEFENDANT: Nothing I can do about it, if you appoint another attorney. THE COURT: Do you want to represent yourself? THE DEFENDANT: No. THE COURT: You do not feel you are capable of dealing with the questions of law? THE DEFENDANT: No, I'm not capable. THE COURT: Very well. The matter remains set for trial to commence Tuesday morning, April 18th, at 9:00 A.M. The Court hereby assigns Attorney John E. Bowen of Vacaville as counsel for the defense for all further purposes herein. The case is at issue, but to avoid any last moment's misunderstanding the Court directs that this matter be called on the criminal calendar in Department 2 on Monday, April 17th, for clarification of any remaining doubts as to the readiness of the case for trial on Tuesday.

". . . . . . . . . . .

"THE COURT: . . . The Court has directed J. Cameron Snell within the hour to deliver to the Clerk's office any and all papers, notes and transcripts relating to the defense of this

action of record, and they will be available. We will notify Attorney John Bowen to meet with Mr. Augustine today, and he will have available such records to commence trial preparation. . . . If Mr. Warden has been hired by anyone to defend you, it will be his obligation to make that fact known properly to the Court. And he can appear Monday morning [April 17] and ask to be substituted, if that is what you desire, in the place and stead of Mr. Bowen. That will not cause postponement of trial, but the Court may consider it, and if proper, allow him to be substituted. But in our Courts when an attorney is representing a client in a criminal case, we like to be apprised of it formerly [*sic*, formally] and on the record.''

On Monday, April 17, appellant and his court-appointed attorney, Mr. Bowen, appeared before the court and informed it that the trial would proceed on Tuesday, April 18, at 9 a.m., as scheduled.

On Tuesday, April 18, Warden appeared and advised the court that he had been retained to represent appellant. He stated that he thought the action was to be set for trial on that day, not that it was actually going to trial. He stated that he was not prepared to go to trial and that he had met his client for the first time that morning.

The court advised Mr. Warden that ''Mr. Bowen has prepared his case pursuant to the assignment, being the second attorney to have done so, and has indicated to the Court this morning that he is prepared to proceed to trial.''

After considerable colloquy between the court and Mr. Warden, the court directed the following question to appellant: ''Mr. Augustine, you are the party most directly involved and concerned here. Is it your desire that the Court relieve Mr. Bowen of assignment and allow Mr. Warden to represent you?'' To this the appellant replied: ''Yes, it is, Your Honor.''

The court thereupon relieved attorney Bowen of his assignment and ordered that Mr. Warden be made appellant's attorney of record. May 16th was set as the trial date and the jury panel was once more dismissed. Thus, Warden was given a one month's continuance in order to prepare for trial.

On May 16 the case was called for trial for the third time. Donald Warden, appellant's counsel, moved for a continuance until June 12 on the ground of his illness. The court stated, ''The record should reflect that you walked in late for the Master Calendar this morning and advised the Court that you were 'sick.' The Court inquired whether you had seen a doc-

tor and/or were taking any medication. You indicated that it was something that came on last night. The court accordingly asked the District Attorney's Office to refer you for suitable medical examination.

"The Court has talked to Dr. Valeriote at the Fairfield Clinic at 10:00 o'clock this morning, after you departed from the Clinic. And Dr. Valeriote indicated that you did not tell him that you were about to commence a trial today, but complained of dizziness and upset stomach; is that correct?" Appellant's counsel replied that he had so advised the doctor's nurse and that he was in court "at extreme difficulty to my own health and I remain here at this time under extreme pain."

Following a further exchange[2] between the court and appellant's counsel, the court concluded that "Your appearance is such as to convince the Court that you are capable of proceeding to trial. . . . The Court is not satisfied with the showing for the continuance now requested and can see no evidence of inability to proceed and afford the defendant his trial representation."

Mr. Warden again stated that he could not represent appellant properly because of his illness.[3] The motion for a continuance was denied.

The prospective jurors were then called and jury selection commenced. *Voir dire* examination was conducted by the trial court. The prosecution directed a few inquiries to the jury collectively. Mr. Warden then advised the court that he did not intend to ask any questions and stated: "Ladies and gentlemen of the jury, I am ill and do not feel that I can represent my client in this matter. And I don't feel that I am capable of representing him, due to my illness. And therefore, I do not intend to proceed."

[2]"THE COURT: The doctor indicated that he found a mild case of upset stomach or gastroenteritis and suggested a bland diet to you, and did not feel that any medication was warranted; is that correct? MR. WARDEN: The doctor told me, 'It was a stomach flu; there was no medication that can be prescribed. I should stay in bed for 3, 4 or 5 days.' And I think he wrote that on the note. THE COURT: Yes. The doctor explained that he was not aware that you were to commence a trial that has been three times continued thus far. And his note simply refers to 'gastroenteritis and dizziness; bed rest and bland diet'."

[3]During the course of Mr. Warden's statement, the court found it necessary to interject, "I will ask the defendant to stop grinning and nodding and laughing in the course of this discourse, because the Court has in mind, after the continuance was last had, the remark the defendant made to you as you hit the hall: 'Next time get a change of venue.' Now, I wish the record to reflect there has been a continuous pattern of imposition upon the due process of this Court in its proceedings."

*Voir dire* examination continued with Mr. Warden asking no questions and exercising no challenges. After selection of a jury on Tuesday, the trial was recessed until Thursday.

Outside the presence of the jury, the court made the following remarks: "Gentlemen, the reason that the Court is holding our jury in abeyance is that the Court wishes to enter upon the record of these proceedings its observation:

"Promptly upon entry of our jury panel this morning, there was a pronounced change in the posture and demeanor of defense counsel and in his speaking voice, in that he entered into a pronounced slouch or almost reclining position, with his head in his hands, and for most of the proceedings this morning had his eyes closed. They promptly reopened as soon as our jurors departed just a moment ago. . . .

". . . As the Court has taken pains to point out upon repeated occasions, its efforts to bring the matter to trial seemed to be facing a continual resistance. And the Court is of the opinion and finds from the demeanor and the evidence before it—referring to the mild stomach upset—that counsel's conduct before the jury was improper and it well may be that someone will have to rule upon the issue as to whether it rests strictly within the province of counsel to flaunt court and taxpayers and have jury panel after jury panel brought back before the People can have their day in court when a person is accused of a crime. This Court will not tolerate any further knowing instances of misconduct by a counsel. In that respect, lest it be misunderstood, I find for the record that counsel has been putting on an act and has malingered before the presence of the jury.

"I do not now gainsay counsel's subjective complaint of an upset stomach—The Court has one, for reasons possibly pertinent to the character of the proceedings in this particular case thus far. In any event, even though a doctor has prescribed no medication and counsel didn't see fit to see a doctor, until the Court suggested it, lest there be anything seriously wrong with him this morning [Tuesday], *the Court proposes to recess this trial until 10:00 o'clock Thursday morning, now that we have our trial jury and alternate juror, and can commence proceedings at that time.*" (Italics added.)

Mr. Warden denied that he was feigning and again described the nature of his illness. The court informed Mr. Warden that if his illness persisted someone from his office could appear on May 18 "*with the appropriate sworn affidavits from a doctor . . . the Court would then be prepared to*

*grant further continuance*[s] *from day to day in order that the matter may be resumed.*" Mr. Warden replied: "*That's satisfactory.*" (Italics ours.)

On May 18 appellant and his counsel, Mr. Warden, appeared in court. Outside the presence of the jury, Mr. Warden moved for a continuance on the ground of ill health and for a mistrial on the ground of his inability to *voir dire* the jury when it had been impaneled. The court denied both motions, noting that no medical affidavits had been presented in support of the claimed illness despite the court's explicit instructions as to their necessity. The court also reiterated its determination that Mr. Warden had been malingering on May 16, the day of the jury's impanelment.[4]

Mr. Warden replied that he felt mentally incapable of continuing the trial and did not plan to cross-examine or put on any evidence.

The court stated that it would entertain a request by Mr. Warden to be relieved as counsel of record and the case could proceed with appointed counsel. Mr. Warden answered that "I cannot in good faith ask to be relieved as attorney if this particular defendant wants me to represent him." He further stated that "if the defendant, knowing my situation, cares to relieve me, I would have no objection." In response to the court's questioning, Mr. Warden insisted that he had prepared the defense case before coming to trial.

Immediately thereafter, appellant, having heard that his counsel did not intend to present evidence or conduct cross-examination, declared that he "still would like to be represented by Mr. Warden." The jury was then called in and the taking of evidence commenced.

Thus appellant, with full knowledge that his attorney intended to sit through the trial without actively participating therein and knowing that attorney Bowen was prepared and "standing by," nevertheless chose to continue to be represented by attorney Warden.

### *Evidence of Guilt*

*Mrs. Ronnie Aden,* a sales clerk at the Sears, Roebuck store in Vallejo, testified that she saw appellant and a male com-

---

[4]In so doing the court stated: "The only matter pertaining to your condition was that discussion that you related that you had and the one I had with Dr. Valeriote after the Court suggested that you have an examination. The *doctor* made it quite clear that no medication was required and *indicated to the Court that if you had told him that you were an attorney about to commence a trial, he would have diagnosed the upset stomach to be a normal occupational hazard of this profession.*" (Italics added.)

panion, later identified as Otis Malone,[5] putting wristwatches in their pockets from trays on top of a showcase. This was on November 22, 1966, about 1 p.m. She approached them and asked if she "could help them with a watch." (She testified that she "was trying to stall for time.") One of the men said, "No." They then headed for the front door. She then spoke to Mrs. Jackson, who immediately went out the front door after the two men.

About 10 or 15 minutes later two police officers brought appellant back into the store. Mrs. Aden testified that she was certain that he was one of the two men she had seen taking the watches. She also identified the eight wristwatches recovered as being of the type that were on display in the trays.

*Mrs. Valerie Jackson* testified that she was the manager of the department in which watches were sold and that Mrs. Aden had directed her attention to appellant and his companion as they were leaving the store. She followed them. About 30 feet outside the the door appellant dropped a watch from his pocket. It was on a gray mount used by the store to display watches.

After following the two men across the parking lot, Mrs. Jackson saw two store employees, William Greig and Ken Schneider, and she beckoned to them to follow the two men.

She further testified that the watches taken had a retail value of from $26 to $50. There is no contention that the value of the watches taken did not exceed $200. (See Pen. Code, § 487.)

*William H. Greig, Jr.,* testified that he was employed by Sears, Roebuck; that a security call came over the public address system; that he immediately went to the jewelry department and talked to Mrs. Aden; that he then went out the front door and saw Mrs. Jackson following two Negro men; that he and Schneider, a fellow employee, got into his car and pursued the two men, who were then running; that when they caught up to the two men, he got out of his car and chased appellant; that when he caught him appellant took five watches out of his pocket and handed them over; that Schneider was pursuing the other man but did not catch him; that Schneider had, however, recovered two of the watches; that they took appellant back to the store; that the police arrived and the watches were turned over to them.

[5] He was also a codefendant in the robbery action but apparently pled guilty in each action before trial.

*Ken Schneider,* an employee of Sears, Roebuck, testified that he went with Greig in the latter's car; that when they caught up to the two men, he chased Malone; that during the chase Malone took two wristwatches out of his pocket and threw them at him; that he did not catch Malone; that he picked up the two watches and went back to where Greig and appellant were; that he saw appellant handing some wrist-watches to Greig; that Greig had five and he had two; that they took appellant back to the store and turned over the watches to the police.

There was other incidental testimony by two police officers, but the above is the gist of the evidence against appellant. The defense did not offer any evidence and appellant's counsel did not cross-examine any of the prosecution witnesses or present any argument to the jury.

On May 24, appellant moved for a new trial. Mr. Warden advised the court that he had revisited the clinic and the physician had informed him that his urine specimen, taken on May 16, had disclosed "physical cells." No physician's affidavit was presented. The court then responded: "The examining physician last Thursday, after a verdict was in, contacted the Court and advised that you had been there. And was quite clear and adamant and indicated there had been some sort of argument with you; that he found you in good health and able to function as a counsel on Thursday the 18th. He did reiterate that he found you to have some stomach upset on May the 16th." After further discussion, the motion for new trial was denied.

### Proper Denial of Motion for Continuance

Review of this case must be approached with certain elemental rules as to continuances in mind.

Penal Code, section 1050, provides in relevant part that "No continuance of a criminal trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance."

■ The continuance of a criminal trial generally is a matter within the discretion of the trial court and will not be disturbed unless an abuse of discretion appears (*People* v. *Buckowski* (1951) 37 Cal.2d 629, 631 [233 P.2d 912]; see *People* v. *Douglas* (1964) 61 Cal.2d 430, 435-436 [38 Cal.Rptr. 884, 392 P.2d 964]).

However, it is obvious that that discretion may not be exercised in such a manner as to deprive a defendant of his fundamental rights such as the right to counsel and the right of a

reasonable opportunity to prepare his defense (see e.g., *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867, 875-876 [59 Cal.Rptr. 440, 428 P.2d 304]).

Few California cases have reviewed the grant or denial of continuances requested on account of the defense counsel's sickness.

█ The absence of defense counsel from the trial due to illness is usually a compelling ground for continuance in a criminal case (*People* v. *Logan* (1854) 4 Cal. 188, 189-190 (abuse of discretion to deny continuance to defendant when counsel absent because ill without at least affording defendant sufficient time to employ other counsel and prepare for trial); see *In re Ali* (1964) 230 Cal.App.2d 585, 590 [41 Cal.Rptr. 108]).

In cases such as the instant one, where defense counsel present in court requests a continuance on the grounds of illness, a factual issue is presented for the trial court as to whether the attorney's condition precludes him from effectively proceeding with his defense (*People* v. *Hanz* (1961) 190 Cal.App.2d 793, 796-797 [12 Cal.Rptr. 282]; *People* v. *Leeper* (1953) 117 Cal.App.2d 462, 466 [256 P.2d 389]).

For example, in *People* v. *Hanz, supra,* 190 Cal.App.2d at p. 797, the denial of a continuance was upheld where a court-appointed examining physician found the defendant who was acting in propria persona physically capable of proceeding. The court noted: "The trial court accepted the testimony of a competent medical expert that defendant was physically able to proceed, over the defendant's unsupported claims of sickness; it had the opportunity to observe defendant's physical appearance and the manner of his conduct, and to hear him express himself; and any conclusion inferring that defendant's 'condition' was but a ruse to further delay the trial will not be disturbed."

Likewise, *People* v. *Morris* (1964) 226 Cal.App.2d 12, 17 [37 Cal.Rptr. 741] (hearing by Supreme Court denied) found no error in the court's refusal to grant a continuance to a defendant proceeding in propria persona, where the court ordered a doctor's examination before ruling on the motion and the doctor reported that defendant was able to continue.

In *People* v. *Leeper, supra,* 117 Cal.App.2d, the denial of a continuance was upheld where the trial court rejected the medical affidavits presented as insufficient (pp. 464, 466).

█ In the instant case, the trial court was correct in its initial refusal to grant a continuance on May 16 and its sub-

sequent denial of a continuance on May 18. Prior to its denial of the continuance requested on May 16, the court talked to the doctor who had examined Mr. Warden. The doctor indicated to the court that Mr. Warden did not tell him that he was about to commence a trial, but merely complained of dizziness and an upset stomach. The doctor indicated to the court that if Mr. Warden had told him that he was an attorney about to commence a trial, he would have diagnosed the upset stomach to be a normal occupational hazard of the legal profession.

On the basis of the doctor's communication with the court, the fact that the doctor prescribed no medication, and the court's opportunity to view Mr. Warden's appearance, we must agree with the court's determination that counsel's upset stomach did not preclude him from effectively representing appellant.

■ The trial court was also correct in denying the continuance on May 18. Even after the court's explicit instructions that medical affidavits would be required for any further continuances, Mr. Warden demanded a continuance solely on the basis of his own unsupported claim of sickness.

There is no doubt that the trial court was correct in denying the requested continuances and ordering appellant's counsel to proceed. ■ The next question is whether appellant was denied his right of counsel by a trial in which his counsel refused to make any attempt at active representation.

A recent case has touched upon the subject of when a court's denial of a continuance requested on the grounds of the attorney's illness constituted a denial of the defendant's right to counsel. In *In re Ali, supra,* 230 Cal.App.2d 585, the defendant appeared in propria persona on the trial date and requested a continuance because his retained counsel notified him the night before that a serious diabetic condition necessitated hospitalization. Further, the retained counsel had notified the district attorney of this situation. No other continuances or motions for continuances had been made in the action. Without ascertaining the truth of the alleged sickness of counsel, the court denied the continuance because an out-of-state witness was present. The court offered, however, to grant the continuance if the defendant agreed to waive a jury trial. On appeal, it was held that since the trial court made no attempt to inquire into the truth of the claimed illness and defendant's diligence in seeking relief, the denial of a continuance was tantamount to a denial of the right to counsel.

The trial court in the present case clearly fulfilled its duty of inquiry into the truth of the claimed disability of appellant's counsel by consulting with the physician to whom the court had directed said counsel and by its own observation of his actions and demeanor both in and out of the presence of the jury.

There is absolutely *nothing* in the record to indicate that counsel ever sought or received any medical care for his alleged condition. When the case was recessed to allow him to obtain such care and have an associate present some proof of said alleged illness, counsel did *nothing*. He simply returned after the recess and said he was still ill.

The claim of a deprivation of appellant's right to counsel is particularly meritless when viewed against the facts of this case. Among other steps taken to insure appellant's right to counsel, the court: (1) appointed counsel, then relieved him at appellant's request, (2) appointed a second counsel to represent appellant when the court was unable to confirm the fact of his representation by any privately retained counsel, (3) allowed the substitution of the second appointed counsel (who was fully prepared for trial) by retained counsel (Mr. Warden) on the morning set for trial, (4) granted a continuance of approximately one month to enable Mr. Warden, retained counsel, to prepare for trial, (5) conducted a diligent inquiry into the truth of Mr. Warden's claimed illness on the next date set for trial, (6) granted a two-day continuance after impanelment of the jury solely on the basis of counsel's unsupported claims of illness when he refused to actively proceed with the defense, despite the court's ruling that he must; at this time, the court also told counsel that further continuances on a day-to-day basis would be granted only upon the presentation of medical affidavits, and (7) on May 18, when a further continuance was denied in the absence of any showing of sickness and Mr. Warden indicated his refusal to cross-examine or put on evidence, the court offered to relieve Mr. Warden and appoint another counsel to represent appellant. Despite the court's offer to substitute counsel, *appellant insisted upon continued representation by his selected counsel, Mr. Warden.*

"Meaningfully applied, the right to counsel includes the *opportunity* to receive 'effective aid in the preparation and trial of the case.' [Citations.]" (Italics added.) (*People* v. *Douglas, supra,* 61 Cal.2d at p. 434.)

Here, appellant was not denied the right to counsel. Rather, he elected to retain a selected counsel whom he knew would make no active effort, instead of exercising his opportunity to substitute his selected counsel with an effective appointed counsel. It should also be noted that the record shows that appellant was familiar with court procedure and the trial of criminal cases. It appears to us that he "went along" with his counsel's strategy in making a record on appeal based upon the premise that he was inadequately represented at the trial.

Here, appellant waived his right to the effective assistance of counsel prior to the trial's commencement. Waivers of the right to counsel must be unqualified and may only be made by a defendant who has been apprised of his rights and understands the consequences of his act (see *People* v. *Douglas, supra,* 61 Cal.2d at p. 435; see generally, Witkin, Cal. Criminal Procedure (1963) Trial, § 380, p. 375). Appellant clearly understood his right to counsel as he personally requested that the court relieve the first appointed counsel due to his dissatisfaction with him. He was aware of the consequences of his decision because he had heard Mr. Warden positively assert that no attempt at effective representation would be made.

Once having made that decision, appellant cannot now claim that he was denied the opportunity for effective assistance of counsel.

In this connection, it is appropriate to mention that the right to counsel may not be used to subvert the orderly and efficient administration of justice or to accomplish dilatory purposes (see *People* v. *Douglas, supra,* 61 Cal.2d at p. 435, and cases cited therein). A recent Supreme Court case recognizes the application of that principle to the granting of continuances, noting that a defendant may not demand a continuance if he is unjustifiably dilatory in obtaining counsel or if he arbitrarily chooses to substitute counsel at the time of trial (*People* v. *Byoune* (1966) 65 Cal.2d 345 at p. 346 [54 Cal.Rptr. 749, 420 P.2d 221]). The proposition that continuances may not be sought to accomplish dilatory purposes is particularly appropriate to the facts of this case.

Judgment affirmed. The appeal from the order denying appellant's motion for a new trial is dismissed, it being nonappealable.

Shoemaker, P. J., and Taylor, J., concurred.