[Crim. No. 17789. Second Dist., Div. Four. Jan. 18, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDERICK C. STUMP, Defendant and Appellant.

**COUNSEL**

Jesse L. Halpern, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**DUNN, J.**—Count VIII of an information filed January 10, 1968 charged appellant Stump, Patricia A. Bowers and Melvin N. Richards with possession on December 15, 1967 of heroin, a felony, in violation of Health and Safety Code section 11500. Each defendant moved to set aside count VIII

of the information, pursuant to Penal Code section 995, and the motions were granted. Bowers was required to plead to other counts in the information and her case therefore was severed from that of appellant and Richards. The People appealed from the order of dismissal as to Richards and appellant; this court reversed[1] and, on remand, Stump and Richards were rearraigned, pleading "not guilty." Their jury trial began September 29, 1969, and concluded October 1st with verdicts of "guilty." Both defendants appealed. Richards died while his appeal was pending so that Frederick C. Stump is now sole appellant. He makes two basic contentions.

I. *Did the Trial Court Erroneously Deny Appellant's Motion to Grant a Continuance and to Sever His Trial from that of Richards?*

As already noted, the case was sent out for trial on September 29, 1969. Prosecution witnesses Holmes and Iavelli testified on September 30th, Iavelli's testimony being completed on October 1st. The examination of the last prosecution witness, Kassel, was completed before 11 a.m. that morning and the People rested. No evidence was offered by either defendant and they, too, rested. After argument and instructions to the jury, the jury returned its verdicts on October 1st at 3:45 p.m.

When the court had convened at 9:30 a.m. the morning of October 1st, appellant Stump claimed to be in "extreme pain," because of a liver condition, and moved to sever his trial from that of Richards and to continue it. The motions were denied, the court stating, "We expect to be through here by today. We will proceed as fast as we possibly can."

Appellant's claim of illness was unsupported by medical or other proof and rested solely upon representations appellant made to his attorney, repeated by the attorney to the trial judge. The attorney told the court that appellant had first informed him of his liver ailment four or five days before the trial began; he had called Dr. Crahan and "Dr. Crahan advised me at that time that he would look into the matter, although he didn't think the defendant was being deprived of any medical treatment that he was required to have."

Penal Code section 1050, relating to speedy trials and to continuances, states: "No continuance of a criminal trial shall be granted except upon affirmative proof in open court . . . that the ends of justice require a continuance." This put upon appellant the burden of establishing the grounds for his motion by proof, and he failed to do so. Appellant contends that the trial judge, not being a medical expert, was required to have

---

[1]*People* v. *Richards,* 2d Crim. No. 14814, an unpublished opinion of Division Three, Second Appellate District.

him examined by a doctor and that the denial of his motion without first securing a medical opinion constituted error. No authority is given for this contention. *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824], cited by appellant, has no relationship to the point.

Here, the trial judge had an opportunity to observe appellant and heard him speak in support of the motions made on his behalf. If it may be said that appellant's motions raised any factual issue as to whether his condition was such as to interfere with his defense, the trial judge had an opportunity to observe his condition and we cannot say from this record that his denial of appellant's motions constituted an abuse of discretion. ■ "A trial court is allowed much discretion in the matter of granting or refusing applications for postponements or continuances, and its action thereon will not be disturbed upon appeal unless there has been a plain abuse of that discretion." *People* v. *Northcott* (1930) 209 Cal. 639, 651 [289 P. 634, 70 A.L.R. 806]. (And see: *People* v. *Douglas* (1964) 61 Cal.2d 430, 435-436 [38 Cal.Rptr. 884, 392 P.2d 964]; *People* v. *Bonville* (1968) 267 Cal.App. 2d 4, 7-8 [72 Cal.Rptr. 592]; *People* v. *Augustine* (1968) 265 Cal.App.2d 317, 329-330 [71 Cal.Rptr. 384]; *People* v. *Hanz* (1961) 190 Cal.App.2d 793, 796-797 [12 Cal.Rptr. 282]; *People* v. *Leeper* (1953) 117 Cal.App.2d 462, 466 [256 P.2d 389].)

## II. *Was the Evidence Sufficient to Sustain Appellant's Conviction?*

■ When appellant was arrested and searched no narcotics were found on him. However, his possession of heroin was amply established by circumstantial evidence. Thus, after a purchase had been made, an undercover police officer accompanying appellant saw him place in his mouth two balloons which appellant had purchased, containing what the officer believed was heroin. The officer testified: "This is a normal way it is done on the street for people that use Heroin or narcotics. They are packaged this way for concealing, because if you are ever stopped by law enforcement or police officers it is a quick way of getting rid of them. You just swallow it." The undercover officer had, at the same time, also purchased three balloons from the same supplier, who handed identical balloons to appellant. The content of the balloons sold to the officer was later chemically tested and found to be heroin. Additionally, appellant's arms contained many marks caused by the unlawful injection of a narcotic.

Appellant contends the evidence that the balloons sold to the undercover agent contained heroin cannot establish that his balloons also contained it. We disagree. This same evidence had been introduced at the preliminary hearing and Division Three of this court in holding such evidence, with inferences to be drawn from it, was sufficient, stated: "All the balloons were

taken from the same box and were similar in appearance. Further, Bowers 'dumped' them into her hand after opening the box and made no apparent effort to differentiate among the balloons while distributing them. These facts strongly imply that the balloons received by Officer Holmes were taken at random from the group and thus constituted a representative sample. Since Officer Holmes' sample contained heroin, it is reasonable to infer that defendants' samples also contained heroin. This type of inference was used and approved in *People* v. *Ihm,* 247 Cal.App.2d 388. . . ."

As stated by our Supreme Court in the very similar *People* v. *Francis* (1969) 71 Cal.2d 66, at p. 72 [75 Cal.Rptr. 199, 450 P.2d 591]: "[7] Francis further asserts that there is no evidence that the package *he* purchased contained marijuana. Although it does not appear that the package Francis received was seized and analyzed, the narcotic character of a substance may, of course, be proved by circumstantial evidence (*People* v. *Ihm,* 247 Cal.App.2d 388, 392 [55 Cal.Rptr. 599]; *People* v. *Vassar,* 207 Cal.App.2d 318, 324 [24 Cal.Rptr. 481]), and here the recited evidence clearly constitutes substantial proof that the package Francis purchased contained marijuana."

The judgment is affirmed.

Kingsley, Acting P. J., and Irwin, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.