STATE OF CONNECTICUT *v.* JOEL G. LABRECK

ALCORN, HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued April 9—decided May 6, 1970

*Igor I. Sikorsky, Jr.,* special public defender, for the appellant (defendant).

*John D. LaBelle,* state's attorney, with whom, on the brief, was *George D. Stoughton,* chief assistant state's attorney, for the appellee (state).

ALCORN, C. J. The defendant was tried to a jury on an indictment charging murder in the first degree in that the murder was committed while perpetrating or attempting to perpetrate a burglary. General Statutes § 53-9 (Rev. to 1968). The jury rendered a verdict of guilty and recommended a sentence of life imprisonment which the court imposed.

The defendant has appealed from the judgment, assigning as error that he was denied the right to have his attorney present during the grand jury proceedings, that the court erred in its charge to the jury and that pictures which were prejudicial to him were admitted in evidence. Assignments of error attacking the finding are abandoned. *State* v. *Griffiths,* 152 Conn. 48, 52, 203 A.2d 144.

The defendant offered no evidence at the trial. The state offered evidence to prove, and claimed to have proved, the following facts. The defendant and an accomplice had broken into a dwelling in West Hartford and were in the basement attempting to open a safe which was located there when the victim of the murder, a cleaning woman, entered the house on the morning of March 3, 1967. The victim discovered their presence and, while attempting to flee, was beaten over the head with a rifle barrel by the defendant. The victim was found, unconscious and bleeding, on the kitchen floor of the house and was taken to a hospital where she was found to be suffering from a fractured skull and a brain injury. She remained in a hospital until she died on October 24, 1967.

The record fails to disclose that the defendant was denied counsel before the grand jury although the statement that this occurred, which is made in the defendant's brief, is not disputed by the state. The defendant concedes that this claimed error is with-

out merit under the settled law of this state. *State*
v. *Menillo,* 159 Conn. 264, 274, 268 A.2d 667; *State* v.
*Stallings,* 154 Conn. 272, 283, 224 A.2d 718.

The only portion of the court's charge which is
before us is the short paragraph in which error is
assigned. We assume, therefore, that the remainder
of the charge was correct in law and that the jury
followed the instructions given them. *Intelisano* v.
*Greenwell,* 155 Conn. 436, 447, 232 A.2d 490. The
single paragraph has been lifted out of context and
it is impossible to determine its relation to the re-
maining subject matter of the charge. It would
appear, however, to have come as a part of the
court's charge concerning the burden of proof which
rested on the state. The paragraph objected to is as
follows: "Now, as has been indicated to you, an
accused person is not obliged to take the witness
stand in his own behalf unless he wishes. It is neces-
sary for the jury to remember that no burden rests
upon the accused to prove himself innocent, but, on
the contrary, as I have already pointed out, the
burden is upon the state to prove the guilt of an
accused beyond a reasonable doubt."

At the conclusion of the entire charge counsel for
the defendant objected to the court's "commenting
on the fact that Mr. LaBreck did not testify. I
believe nothing should have been said . . . ." The
claim now made is that in the absence of a request
for such a charge by the defendant the charge
violated the rule in *Griffin* v. *California,* 380 U.S.
609, 85 S. Ct. 1229, 14 L. Ed. 2d 106. The *Griffin* rule
established that it is improper for the prosecution
to comment upon the failure of an accused person
to take the witness stand or for the court to instruct
the jury that they may draw an unfavorable infer-
ence from the defendant's failure to testify. We do

not read the language of the court which is attacked in the present case as impinging on the *Griffin* rule. The failure of the defendant to testify was not commented upon and there was no mention of any inference to be drawn from it. The court merely told the jury that the defendant was not obliged to testify, that he had no burden to prove his innocence, and that it was the state's burden to prove him guilty. The charge was correct in law and there is no claim to the contrary. We fail to understand how the instruction can be held to be prejudicial. On the contrary, we believe that it would be helpful to the defendant since it must be assumed that the jury would follow the instruction. As a consequence, we believe that the jury would, more probably than not, treat the defendant's failure to testify merely as the exercise of a right afforded him by the law. We conclude that no prejudicial error resulted from the instruction given. *State* v. *Woodmansee,* 354 F.2d 235, 236 (2d Cir.); *State* v. *Garguilo,* 310 F.2d 249, 252 (2d Cir.); *Becher* v. *United States,* 5 F.2d 45, 49 (2d Cir.), cert. denied, 267 U.S. 602, 45 S. Ct. 462, 69 L. Ed. 808.

Cases dealing with the application of the *Griffin* rule are collected in an annotation in 18 A.L.R.3d 1335, 1337.

In addition to the facts already related, the state offered evidence to prove and claimed to have proved that the police found the victim on the floor of the kitchen at about 8:40 p.m. on March 3, 1967. She was alive but unconscious and there was blood on the floor and spattered on a cabinet. Upon her removal to a hospital an operation was performed necessitated by a large skull fracture, a large blood clot pressing against the brain and a half inch displacement of the brain within the skull. A section

of the skull measuring two and one-half by four inches was removed in the operation. Thereafter the victim was unable to feed or care for herself and her weight fell from 155 or 160 pounds to sixty-five pounds at the time of her death. Her death was caused primarily by multiple traumatic lacerations of her brain, with emaciation, ulcers, atrophy, and, ultimately, focal pneumonia as contributing factors.

A police officer testified that he found the victim lying on the kitchen floor with her head near a counter and her feet extended. The state then offered a photograph which the officer identified as a fair representation of the area where the victim was found. The victim's body did not appear, but what appeared to be blood was shown to be spattered on the floor, on a wall and on the side of the counter. The defendant objected that the picture served "no useful purpose" and was "just inflammatory". The state claimed the exhibit to indicate the force used when the wound was inflicted. The court admitted the picture as an exhibit and the defendant duly excepted.

A neurosurgeon testified for the state concerning the victim's critical condition upon her admission to the hospital and that a tracheostomy was performed to save her life. He was then shown a photograph of the back of the victim's head after the operation had healed which he identified as showing the area of the injury which he had described. Defense counsel objected that the picture was irrelevant and would only inflame the jury. The state claimed the exhibit as a step in meeting its burden to establish a causal connection between the injury of March 3, 1967, and the death seven months later. The court admitted the picture in evidence and the defendant duly excepted.

A pathologist testified for the state that he performed an autopsy on the victim on the day following her death and that she was emaciated, her organs had atrophied, a part of her skull was missing and her brain had six areas of gross abnormality. He testified that pneumonia was the immediate cause of death, the primary initiating factor being the trauma to the brain, and that the victim was unable to function as a human being and, at the time of her death, weighed sixty-five pounds. The state then offered a photograph of the emaciated victim in connection with the doctor's testimony. Defense counsel objected on the ground that it was "not necessary" and that it was gruesome. The court admitted the picture in evidence and the defendant duly excepted.

The great weight of authority is that photographs, even though gruesome, are admissible in evidence when otherwise properly admitted if they have a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry. Note, 73 A.L.R.2d 769, 787. A photograph, the tendency of which may be to prejudice the jury, may be admitted in evidence if, in the sound discretion of the court, its value as evidence outweighs its possible prejudicial effect. *Thibodeau* v. *Connecticut Co.*, 139 Conn. 9, 14, 89 A.2d 223.

A vital element in the state's case was proof beyond a reasonable doubt that the victim's death was causally connected to the massive skull fracture and brain injury inflicted by the defendant. None of the photographs were in color and each of them served to illustrate to the jury the conditions described in the testimony of the several witnesses concerning the aspects of the proof with which they were concerned. *State* v. *Conte*, 157 Conn. 209, 215,

251 A.2d 81, cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 428. Each photograph depicted facts which were relevant and material to the state's case, and the photographs were not so gruesome as to overbalance their evidential value. *State* v. *Hanna,* 150 Conn. 457, 461, 191 A.2d 124. The court did not abuse its discretion in admitting them in evidence. *State* v. *Culombe,* 147 Conn. 194, 215, 158 A.2d 239, rev'd on other grounds, 367 U.S. 568, 81 S. Ct. 1860, 6 L. Ed. 2d 1037; see *State* v. *Bailey,* 79 Conn. 589, 602, 65 A. 951.

There is no error.

In this opinion the other judges concurred.