STATE OF CONNECTICUT *v.* ROOSEVELT SMITH

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued October 13—decision released December 27, 1977

*Prescott W. May,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John R. Redway,* assistant state's attorney, for the appellee (state).

HOUSE, C. J. On a trial to a jury, the defendant was found guilty of the crime of misconduct with a motor vehicle, in violation of § 53a-57 of the General Statutes, in causing the death of Nicholas Diglio by his criminal negligence and intoxication

while operating a motor vehicle. From the judgment rendered on the verdict, he has taken the present appeal. He has briefed and argued three claims of error in evidential rulings: that the court erred in admitting into evidence testimony relating to admissions made by the defendant when he had not been given the *Miranda* warning (*Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694), in admitting testimony of the arresting officer as to the attitude of the defendant at the accident scene, and in admitting into evidence photographs of the decedent taken at the scene of the accident.

The conviction of the defendant arose out of a collision which occurred at about 12:30 a.m. on July 31, 1974, at the intersection of routes 34 and 152 in Orange. Two motor vehicles heading easterly on route 34 had stopped for a red traffic light. Nicholas Diglio, the driver of the first car, got out of his car and went back to tell the driver of the second car, Janet McKernan, that he had noticed that the muffler on her car was hanging. While he was standing beside her car, it was struck in the left rear by the car driven by the defendant. Diglio was hit and his body was found more than 200 feet down route 34 at a point beyond where the defendant's car came to a stop against a utility pole.

Officer Russell Smith of the Orange police department arrived at the scene within minutes of the collision, called for an ambulance, and began an investigation. He first checked the body of Diglio and found no signs of life. He then spoke to the defendant who was standing near his car. Concluding that the defendant had no serious injuries, the officer went to take care of Mrs. McKernan and then undertook an investigation to determine what

had happened. He went back to see the defendant who was walking around the intersection. He observed that the defendant was walking unsteadily and his breath had a strong odor of alcohol. At trial and over the objections of the defendant, the officer was permitted to testify that in response to his inquiry as to what had happened the defendant replied: "I don't know." To the officer's inquiry as to whether the defendant had been drinking, the defendant stated: "No." When the officer stated to the defendant that he detected a strong odor of alcohol on the defendant's breath, the defendant stated: "Okay, I had been drinking. I had only three or four drinks." The officer further testified at trial that the defendant's speech was "mumbled" and "thick-tongued" and that his attitude was "carefree, indifferent."

Through the same officer, eight photographs of the accident scene were introduced into evidence for the jury's consideration. The officer testified that those photographs accurately represented the scene as he had observed it.

We find no error in any of the court's evidential rulings.

As to the statements of the defendant made to the police officer at a time when he had not been given the warning required by *Miranda* v. *Arizona,* supra, the court concluded that they were made by the defendant to the officer during the latter's investigation of the accident and while in a noncustodial situation.

It is now well settled that incriminating statements made by a defendant are admissible in evidence whether or not the *Miranda* warning has been

given when the statements were not made during a "custodial interrogation." The United States Supreme Court defined that term in *Miranda* (p. 444): "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." This principle has repeatedly been affirmed by decisions of the United States Supreme Court, most recently in *Oregon* v. *Mathiason,* 429 U.S. 492, 97 S. Ct. 711, 50 L. Ed. 2d 714; and *Beckwith* v. *United States,* 425 U.S. 341, 96 S. Ct. 1612, 48 L. Ed. 2d 1; by decisions of the Second Circuit Court of Appeals; see *United States ex rel. Sanney* v. *Montanye,* 500 F.2d 411; *United States* v. *Hall,* 421 F.2d 540; and by our own decisions; see *State* v. *Bennett,* 171 Conn. 47, 368 A.2d 184; *State* v. *Schaffer,* 168 Conn. 309, 314, 362 A.2d 893; and *State* v. *Szabo,* 166 Conn. 289, 348 A.2d 588; see also discussions in annotation, "Custodial Interrogation—*Miranda* Rule," 31 A.L.R.3d 565, and Keefe, "Confessions, Admissions and the Recent Curtailment of the Fifth Amendment Protection," 51 Conn. B.J., No. 3, pp. 266, 281. The trial court could properly conclude, as it did, that the statements made by the defendant to the police officer were made during the routine investigatory stage of a motor vehicle accident in a noncustodial situation and were, therefore, admissible in evidence.

During his examination of Officer Smith and after the officer had testified that he had detected a strong odor of alcohol on the breath of the defendant, who admitted to having had three or four drinks, the state's attorney asked the officer: "What was Mr. Smith's general attitude at that time?" The defendant objected on the ground that

"I don't think that's necessarily relevant, what his attitude was." The state claimed it was relevant on the issue of whether the defendant was intoxicated and the court, after confirming that the question was asked as pertinent to the issue of intoxication, permitted the witness to testify that "[h]is attitude was carefree, indifferent." The trial court has broad discretion in ruling on questions of relevance. *State* v. *Rose,* 168 Conn. 623, 636, 362 A.2d 813. The information solicited was germane to the issue of the intoxication of the defendant and we find no error in that ruling.

After the police officer had testified that eight photographs accurately represented the scene of the accident as he had observed it, the state offered the photographs in evidence. The transcript discloses that an unrecorded discussion then took place at the bench after which the court stated: "Objection is made to the admissibility of these photographs because their gruesomeness might tend to unduly affect the jury, and I want to put on the record that I have examined the photographs and overruled the objection." We stated in *State* v. *LaBreck,* 159 Conn. 346, 351, 269 A.2d 74, the general rule applicable to such a question: "The great weight of authority is that photographs, even though gruesome, are admissible in evidence when otherwise properly admitted if they have a reasonable tendency to prove or disprove a material fact in issue or shed some light on some material inquiry. Note, 73 A.L.R.2d 769, 787. A photograph, the tendency of which may be to prejudice the jury, may be admitted in evidence if, in the sound discretion of the court, its value as evidence outweighs its possible prejudicial effect. *Thibodeau* v. *Connecticut Co.,* 139 Conn. 9, 14, 89 A.2d 223." See also *State*

v. *Dubina,* 164 Conn. 95, 102, 318 A.2d 95; *State* v. *Conte,* 157 Conn. 209, 216, 251 A.2d 81, cert. denied, 396 U.S. 964, 90 S. Ct. 439, 24 L. Ed. 2d 428; *State* v. *Hanna,* 150 Conn. 457, 460, 191 A.2d 124. The admission of the photographs was in the broad discretion of the trial court, and we find no abuse of discretion in the court's ruling.

There is no error.

In this opinion the other judges concurred.