STATE OF CONNECTICUT *v.* ERNESTINE BEMBER

BOGDANSKI, PETERS, HEALEY, SHEA and WRIGHT, Js.

Argued January 7—decision released April 7, 1981

*Eugene J. Riccio,* assistant public defender, with whom, on the brief, was *Herbert J. Bundock,* public defender, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J.  After a trial to a jury, the defendant was found guilty of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1).[1]  The defendant has appealed from the judgment rendered upon the verdict, pressing six claims of error.  She contends that the trial court erred (1) in denying her motions for acquittal; (2) in excluding evidence of the victim's prior convictions; (3) in its questioning of a witness; (4) in denying her motion for a new trial; (5) in permitting the introduction into evidence of an autopsy photograph; and (6) in denying her motion to dismiss.

From the evidence presented at trial, the jury could reasonably have found the following:  On the night of July 17, 1978, Mary Days, wife of the victim Robert Days, and Linda Vereen, who was pregnant with the victim's child, witnessed a fight between Robert Days and the defendant.  The defendant hit Days in the face with a bottle and said that she would get Billie Hatton to kill Days.

In the early morning hours of July 18, 1978, Vereen spoke to the defendant.  The defendant told Vereen that she was sorry that Vereen's baby would not have a father.

---

[1] General Statutes Sec. 53a-55 provides in relevant part:  "(a) A person is guilty of manslaughter in the first degree when:  (1) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ."

Willie May Brody saw Billie Hatton and Robert Days talking together after 1 p.m. on July 18, 1978, between buildings 30 and 31 of the Father Panik Village housing complex in Bridgeport. At about the same time, Mary Days, from her bedroom window, saw her husband running between these buildings and saw Hatton standing behind building 30 holding a gun. The defendant was standing next to Hatton. Robert Days also had a gun and he and Hatton were firing at one another. At this time Robert Days told his wife to get away from the window, which she did by going to the kitchen window.

Vereen saw Days standing near a utility pole in the vicinity of building 31. She then saw Hatton fall to the ground at the corner of Martin Luther King Drive and Hallet Street. The defendant picked up the gun, held it in both hands, and fired it twice in the direction of Days.

Mary Days, when she got to the kitchen window, saw her husband falling to the ground with a chest injury and observed the defendant, Hatton, and another person walking toward a car parked on Martin Luther King Drive. The defendant was carrying a gun.

Dr. Robert W. Barry and Dr. Nam H. Lee also testified for the state. Barry stated that at approximately 1:45 p.m. on July 18, 1978, at Bridgeport Hospital, he treated Robert Days for a chest wound. He testified that in his opinion a bullet caused the damage to Day's chest and lung. Lee, a pathologist at Bridgeport Hospital, testified that he performed the autopsy on Robert Days. He stated that the bullet entered Days' body from the

back, passed through the left lung, and exited through the front of the chest. Lee also testified that Days died due to the blood which filled Days' lungs as a result of the gunshot wound.

I

The defendant's first claim of error is that the trial court erred in denying her motions for acquittal. The defendant claims that the evidence adduced at trial was insufficient, as a matter of law, to sustain a verdict of guilty beyond a reasonable doubt.

" 'When a jury verdict is challenged on the ground that the evidence is insufficient to sustain the verdict, the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. . . .' Each essential element of the crime charged must be established by such proof . . . and although it is within the province of the jury to draw reasonable, logical inferences from the facts proven, they may not resort to speculation and conjecture." *State* v. *Festo,* 181 Conn. 254, 259, 435 A.2d 38 (1980); *State* v. *Saracino,* 178 Conn. 416, 419, 423 A.2d 102 (1979). It is the cumulative impact of a multitude of facts, and not any one fact, which establishes guilt in a case involving substantial circumstantial evidence; *State* v. *Brown,* 168 Conn. 610, 616, 362 A.2d 910 (1975); and the evidence must be given the construction most favorable to sustaining the jury's verdict. *State* v. *Nemeth,* 182 Conn. 403, 410, 438 A.2d 120 (1980); *State* v. *Harris,* 182 Conn. 220, 221, 438 A.2d 38 (1980); *State* v. *Tucker,* 181 Conn. 406, 418, 435 A.2d

986 (1980). Our inquiry is thus limited to whether, on the facts established and inferences reasonably to be drawn, the verdict can be supported. *State* v. *Moye,* 177 Conn. 487, 514, 418 A.2d 870, judgment vacated on other grounds, 444 U.S. 893, 100 S. Ct. 199, 62 L. Ed. 2d 129 (1979); *State* v. *Benton,* 161 Conn. 404, 410, 288 A.2d 411 (1971).

The essence of the defendant's claim is that the state's case is predicated on physically impossible conclusions. Specifically, the defendant contends that if the testimony of Mary Days, i.e., that it took her only a "second" to go from the bedroom to the kitchen, is to be believed, then the events testified to by Vereen, with respect to the circumstances surrounding the shooting, could not have physically happened.

We have noted that contradiction between the testimony of different witnesses and confusion in the testimony is precisely the type of factual conflict that Anglo-American jurisprudence has traditionally entrusted to the jury. *State* v. *Gaynor,* 182 Conn. 501, 504, 438 A.2d 739 (1980). "It is for the jury to untangle the knotted and sometimes broken lines of testimony and we will disturb their fact finding only where there is insufficient evidence to justify a finding of guilt beyond a reasonable doubt." *State* v. *Gaynor,* supra; *State* v. *Ortiz,* 169 Conn. 642, 646, 363 A.2d 1091 (1975). In viewing the evidence in the light most favorable to the sustaining of the jury's verdict, we cannot say that the evidence was insufficient as a matter of law to support a verdict of guilty. *State* v. *Grant,* 177 Conn. 140, 142, 411 A.2d 917 (1979). The court did not err in failing to direct a judgment of acquittal.

## II

At trial, the defendant sought to introduce evidence of two prior convictions of the victim, Robert Days: breach of peace by assault on November 24, 1971, and threatening as well as assault in the second degree on July 27, 1973. The defendant claims that the court erred in excluding evidence of these prior convictions.

In *State* v. *Miranda,* 176 Conn. 107, 109–10, 405 A.2d 622 (1978), we held that evidence of a homicide victim's violent character, regardless of the extent of the accused's knowledge of such character, may be offered as evidence by the accused to show that the victim was the aggressor in their encounter. Although, in certain circumstances, the victim's prior convictions of crimes of violence may be admitted, we emphasized that the accused was not authorized "to introduce any and all convictions of crimes involving violence, no matter how petty, how remote in time, or how dissimilar in their nature to the facts of the alleged aggression. In each case the probative value of the evidence of certain convictions rests in the sound discretion of the trial court." *State* v. *Miranda,* supra, 114.

In *Miranda,* the fatal shooting took place in 1975, and the convictions offered consisted of two convictions of breach of peace by assault in 1965, a conviction for carrying a dangerous weapon in 1969, and a conviction of assault in the second degree in 1973. While in *Miranda* we reversed the trial court's exclusion of the convictions on other

grounds,[2] our opinion did note that the specific convictions offered could be "questioned as being too remote in time or lacking elements of violence, depending on the underlying facts and circumstances." *State* v. *Miranda,* supra, 114–15.

Under the circumstance of this case, we cannot say that the trial court abused its discretion by excluding the prior convictions. The convictions offered by the accused occurred, respectively, six and one-half years and five years prior to the incident now at issue. The defendant has failed to demonstrate that she adduced such similarities between the underlying facts of the convictions offered and the facts of the incident involved in this trial to warrant their admission. See *State* v. *Miranda,* supra, 114–15. Thus, the trial court could have reasonably concluded that the prior convictions lacked sufficient probative value.

### III

The defendant's third claim relates to five questions posed to Linda Vereen by the trial court. Vereen initially testified as a witness for the state, and was later called as a defense witness. The contested questioning by the court occurred after Vereen had been called by the defense.

In calling Vereen to the witness stand, the defense attempted to discredit her testimony as a prosecution witness by demonstrating inconsistencies between her trial testimony and her prior sworn statement to the police. At trial, Vereen testified that she did not see William Hatton and Robert

---

[2] The trial court had excluded the convictions not for the lack of probative value, but for the lack of a showing that the defendant knew of them. See *State* v. *Miranda,* 176 Conn. 107, 115, 405 A.2d 622 (1978).

Days exchange gunfire. Called as a defense witness, defense counsel confronted her with her prior sworn statement that "I saw Boo Boo [Robert Days] against building 30 shooting his gun across the Drive at Billie [Hatton], who was shooting back at Boo Boo." The state's attorney then elicited from the witness that she did not recall seeing Hatton and Days exchange gunfire. After redirect examination by defense counsel, the court posed a series of questions to the witness.[3]

The function of the court in a criminal trial is to conduct a fair and impartial proceeding. *Glasser* v. *United States,* 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 (1942). "Whether or not the trial judge shall question a witness is within his sound discretion. The extent of the examination is likewise within his sound discretion. Its exercise will not be reviewed unless he has acted unreasonably, or, as it is more often expressed, abused his discretion. The judge must not exhibit bias or prejudice nor

---

[3] The questioning objected to by the defendant consisted of the following questions:

"The Court: What is your best recollection now, as you sit in the witness stand, as to what you saw or what you did not see, preferably what you saw of this incident on the day it happened? Do you understand my question?

Miss Vereen: No, sir.

The Court: As you are sitting there now, what do you remember seeing?

Miss Vereen: Boo Boo — Billie running to the car and Ernestine [i.e., the defendant], and when I got to the window Boo Boo ran around the building and Billie fall and Ernestine pick up the gun.

The Court: Did you see any shooting by anybody else?

Miss Vereen: No.

The Court: Other than Ernestine; you say you saw her shoot or just pick up the gun?

Miss Vereen: I saw her shoot.

The Court: Do you know how many times she fired the gun?

Miss Vereen: Twice.

The Court: Twice, All right."

take sides." *State* v. *Cianflone,* 98 Conn. 454, 469, 120 A. 347 (1923). The trial judge must avoid taking an apparent position of advocacy in the case before him.[4] See *Quercia* v. *United States,* 289 U.S. 466, 53 S. Ct. 698, 77 L. Ed. 1321 (1933); *State* v. *Echols,* 170 Conn. 11, 14, 364 A.2d 225 (1975). From our examination of the record presented on appeal, we are satisfied that the trial judge fully appreciated his role of impartiality and did not abuse his discretion.

In this case, the trial court's questioning of the witness was "necessary to clarify testimony and assist the jury in understanding the evidence." *United States* v. *DeSisto,* 289 F.2d 833, 834 (2d Cir. 1961). We note that the trial court asked questions of both prosecution and defense witnesses; see *United States* v. *Harris,* 546 F.2d 234, 238 (8th Cir. 1976); and that the record clearly reveals that the trial court impartially attempted to clarify the witnesses' testimony.

"One of the chief roles of the trial judge is to see that there is no misunderstanding of a witness's testimony. The judge has a duty to comprehend what a witness says as much as it is his duty to see that the witness communicates with the jury in an intelligible manner. A trial judge can do this in

---

[4] The Ninth Circuit, in *United States* v. *Eldred,* 588 F.2d 746 (9th Cir. 1978), said at p. 780, "[i]t is proper for the court to question witnesses to clarify and level up facts, as long as the questioning is done in a nonprejudicial fashion and the court does not adopt a partisan stance," referring to, inter alia, *Glasser* v. *United States,* 315 U.S. 60, 82–83, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *United States* v. *Sidman,* 470 F.2d 1158, 1162–63 (9th Cir. 1972), cert. denied, 409 U.S. 1127, 93 S. Ct. 948, 35 L. Ed. 2d 260 (1973). For some other cases in this area, see, e.g., *United States* v. *Frazier,* 584 F.2d 790, 793 (6th Cir. 1978); *United States* v. *Latimer,* 548 F.2d 311, 314 (10th Cir. 1977); *United States* v. *Gross,* 103 F.2d 11 (7th Cir. 1939).

a fair and unbiased way. His attempt to do so should not be a basis of error. Where the testimony is confusing or not altogether clear the alleged 'jeopardy' to one side caused by the clarification of a witness's statement is certainly outweighed by the desirability of factual understanding. The trial judge should strive toward verdicts of fact rather than verdicts of confusion." *Ray* v. *United States*, 367 F.2d 258, 261 (8th Cir. 1966), cert. denied, 386 U.S. 913, 87 S. Ct. 863, 17 L. Ed. 2d 785 (1967), quoted in *United States* v. *McColgin*, 535 F.2d 471, 475 (8th Cir.), cert. denied, 429 U.S. 853, 97 S. Ct. 145, 50 L. Ed. 2d 128 (1976). We conclude that the court's questions were neither improper nor prejudicial.

IV

The defendant's fourth claim is that the trial court erred in denying her motion for a new trial. The defendant's argument is based upon the state's failure to disclose timely a toxicological report on the victim. On the date the trial was to begin, defense counsel made an oral motion for disclosure of the toxicological report. The state indicated that no such report was in its file, but that it would make a further inquiry. After Dr. Lee, the pathologist who had performed the autopsy, had testified, defense counsel again asked for a toxicological report and Lee himself indicated that he was not certain whether he had made such a report. Two days later, the state informed the court that Lee's office had informed the office of the state's attorney that in fact Lee's records indicated that no toxicological blood studies had been made.

Eight days after the jury convicted the defendant, the state filed a "Supplemental Disclosure" con-

taining the toxicological report. The report indicated the presence of amounts of the drug lidocaine and traces of cocaine in the victim's gastric juices, kidney, liver, and spleen. The defendant's motion for a new trial based upon the belated disclosure of this report was denied by the trial court. The defendant claims that this denial violated her rights under the fourteenth amendment to the United States constitution and article first, § 8, of the state constitution. She specifically contends that this denial violates the standards of due process as delineated by the United States Supreme Court in *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

We have had occasion to note that "[t]he heart of the holding in the *Brady* case is the prosecution's suppression of evidence in the face of a defense production request where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression, (b) evidence favorable to the defense and (c) materiality. These are the standards by which the prosecution's conduct is to be measured." *State* v. *Moynahan,* 164 Conn. 560, 593, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

While we are aware that suppression of material evidence justifies a new trial "irrespective of the good faith or bad faith of the prosecution"; see *Brady* v. *Maryland,* supra, 87; *Giglio* v. *United States,* 405 U.S. 150, 153, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972); we do point out that the defendant specifically states that she makes no allegation that the state's attorney had prior knowledge of the information disclosed in its supplementary dis-

closure.  Although this case does not present an exact *Brady* situation, we believe that the standards developed by the rationale of *Brady* and its progeny are to be applied here where the defense made a request for the specific information.

Even if we assume that the state is to be charged with knowledge of the existence of the toxicological report prior to the verdict and that such information could be favorable to the defense, the defendant has not established that the information is material to the question of guilt so as to warrant a new trial.

We have noted that " '[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.' *United States* v. *Agurs*, [427 U.S. 97, 109–110, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976)].  The test for materiality is laid down in *Agurs* (pp. 112–13) as follows: '[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.  This means that the omission must be evaluated in the context of the entire record.  If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.  On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.' " *State* v. *DeSantis*, 178 Conn. 534, 548, 423 A.2d 149 (1979).  The Ninth Circuit has observed, citing *Giglio*, that "a new trial is not automatically required whenever the prosecution's files subsequently reveal evidence of possible utility to the

defense, but of unlikely weight in altering that verdict." *United States* v. *Diaz-Rodriquez,* 478 F.2d 1005, 1008 (9th Cir.), cert. dismissed, 412 U.S. 964, 93 S. Ct. 3024, 37 L. Ed. 2d 1013 (1973).

The defendant claims that evidence of lidocaine and traces of cocaine support her claim of self-defense and argues that the verdict is one of questionable validity. We do not agree.

First, the defendant has offered no evidence which would even suggest that the traces of lidocaine or cocaine found in the victim's body were of such an amount which would bear on the issue of who was the aggressor in the present case.

Second, we do not agree that the verdict in this case is one of questionable validity. It is true that there were questions of credibility of the witnesses, but there was evidence which the jury as the finder of fact could believe and which would support the verdict. Even though the defendant did not testify at the trial, there was opportunity for testimony as to the victim's aggressive behavior at the time of the incident at issue. Touching on the claim of self-defense, Dr. Lee testified that from his autopsy of the victim, and the size of the wound, he was of the opinion that the bullet entered the victim's back and exited from his chest. From our review of the record as a whole, we conclude that there was little evidence to support the defendant's apparent claim that the victim was the aggressor.

The question of materiality is a subjective one requiring that the "omitted evidence" be evaluated in the context of the whole record. *United States* v. *Agurs,* supra. The defendant has failed to demonstrate that the toxicological report "creates a

reasonable doubt that did not otherwise exist."
*United States* v. *Agurs*, supra; see *Giglio* v. *United States*, supra, 154. Assessing the toxicological report in the context of the entire record, we cannot say that the evidence in that report, indicating the presence of drugs in the victim's body, could have affected the verdict. See *State* v. *DeSantis*, supra, p. 8. Our review of the record indicates that there is no reasonable doubt about this guilty verdict whether or not the toxicological report is considered. See *United States* v. *Agurs*, supra.

## V

The state offered as evidence an autopsy photograph of Robert Days, which was identified by three witnesses as the body of the victim. Defense counsel objected to the introduction of the photograph and offered to stipulate that the identity of the person who was shot and the person who was the subject of the autopsy was the same. The court allowed the state to introduce the photograph over the defendant's objection. On appeal, the defendant raises the issue of whether the introduction of this evidence was proper in view of its allegedly inflammatory and prejudicial nature as opposed to its probative value.

We have stated: " 'The great weight of authority is that photographs, even though gruesome, are admisssible in evidence when otherwise properly admitted if they have a reasonable tendency to prove or disprove a material fact in issue or shed some light on some material inquiry. Note, 73 A.L.R.2d 769, 787. A photograph, the tendency of which may be to prejudice the jury, may be admitted in evidence if, in the sound discretion of the court, its value as evidence outweighs its possible

prejudicial effect. *Thibodeau* v. *Connecticut Co.,* 139 Conn. 9, 14, 89 A.2d 223 [1952].' " *State* v. *Smith,* 174 Conn. 118, 122, 384 A.2d 347 (1977). The trial court exercises a broad discretion in admitting such evidence, and its determination will not be disturbed on appeal unless a clear abuse of that discretion is shown. *State* v. *Piskorski,* 177 Conn. 677, 700–701, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); *State* v. *Smith,* supra, 123.

"It cannot be doubted that to offer wholly irrelevant evidence of a gruesome character merely to inflame the members of the jury would be indefensible and intolerable. 'On the other hand the prosecution, with its burden of establishing guilt beyond a reasonable doubt, is not to be denied the right to prove every essential element of the crime by the most convincing evidence it is able to produce.' " *State* v. *Piskorski,* supra, 701–702.[5]

We cannot conclude that the trial court abused its discretion in admitting the single, black and white autopsy photograph of the deceased. See *State* v. *Piskorski,* supra; *State* v. *Hanna,* 150 Conn. 457, 191 A.2d 124 (1963).

## VI

The defendant finally claims error in the denial of her motion to dismiss the information. The defendant was arrested pursuant to a warrant

---

[5] We have also noted: "In general, photographs of a corpse have been held properly admissible in prosecutions for homicide as against objections on the ground of prejudicial gruesomeness; note, 73 A.L.R.2d 769, 787; or on the ground that they constituted merely cumulative evidence. Id., p. 807." *State* v. *Hanna,* 150 Conn. 457, 461, 191 A.2d 124 (1963). See *State* v. *Piskorski,* 177 Conn. 677, 701, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

based upon the affidavit of Sergeant Arthur A. Buchanan, a twenty-year detective with the Bridgeport police force. The defendant filed a motion to dismiss the information, which the trial court denied after hearing oral argument. On appeal, the defendant now claims that the trial court erred in denying this motion since the affidavit was constitutionally deficient as to both the fourth amendment to the United States constitution and article first, § 7, of the state constitution.

The fourth amendment to the United States constitution provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation." See also Conn. Const., art. I § 7. " 'Through the fourteenth amendment the fundamental federal constitutional safeguards as to the issuance of warrants embodied in the fourth amendment, as interpreted and applied in decisions of the United States Supreme Court, are made obligatory upon the states. *Ker* v. *California,* 374 U.S. 23, 33, 83 S. Ct. 1623, 10 L. Ed. 2d 726 [1963].' " *State* v. *Jackson,* 162 Conn. 440, 443, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972); see *State* v. *Licari,* 153 Conn. 127, 214 A.2d 900 (1965).

The factual situation regarding the issuance of the arrest warrant in this case is similar to that present in *State* v. *Jackson,* supra. In both cases, a police officer filed the sole affidavit supporting the application. As we stated in *Jackson* (p. 443), "[i]n testing the validity of the warrant, the reviewing court can only consider information brought to the magistrate's attention. *Whiteley* v. *Warden,* 401 U.S. 560, 565 n.8, 91 S. Ct. 1031, 28 L. Ed. 2d 306 [1971]; *Aguilar* v. *Texas,* [378 U.S. 108] 109 n.

[84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964)]; *Gior-denello* v. *United States,* [357 U.S. 480] 486 [78 S. Ct. 1245, 2 L. Ed. 2d 1503 (1958)]." See *State* v. *DeChamplain,* 179 Conn. 522, 530–31, 427 A.2d 1338 (1980). "Since the only information before the issuing authority was the affidavit of the police officer, the decisive question is whether the facts recited in it were sufficient to support a finding of probable cause." *State* v. *Jackson,* supra, 444. Probable cause to arrest "exists if: (1) there is probable cause to believe a crime has been committed; and (2) there is probable cause to believe that the person to be arrested committed that crime." *State* v. *DeChamplain,* supra, 528–29.

In the present case, the detective's affidavit relied in part on sworn statements of Linda Vereen and Mary Days as the basis for the detective's belief that the defendant had committed a crime.[6] In addition, this affidavit referred to an affidavit of the defendant, taken by this detective after interviewing her, which placed her at the scene of the shooting with Hatton. In her affidavit, she admitted picking up Hatton's gun after he was shot, although she maintained that she did not remember firing it. The test announced in *Aguilar* v. *Texas,* supra, 114, states that the magistrate issuing the warrant must be "informed of (1) some of the underlying circumstances relied on by the person providing the information to the affiant; and (2) some of the underlying circumstances from which the affiant con-

---

[6] The affidavits of Linda Vereen and Mary Days were not attached to the application for the arrest warrant. The detective's affidavit set out that "witnesses were uncovered that stated that after Hatton was shot by Days, Ernestine Bember picked up the gun that Hatton had and returned the fire, and it was she who fired the fatal shots. This was corroborated in 2 executed affidavits from Mary Days and Linda Vereen."

cluded (a) that the informant, whose identity need not even be disclosed, was credible, or (b) that his information was reliable." *State* v. *Jackson,* supra, 446.

The first prong of the *Aguilar* test is met. Sergeant Buchanan's affidavit indicates that his statements concerning the underlying circumstances were based upon information provided by eyewitnesses to the events and corroborated in affidavits signed by Vereen and Days. See *State* v. *Jackson,* supra, 446.

The second prong of the test is also met, since the facts presented to the issuing judicial officer satisfy part (b) of that prong. "[I]f there has been sufficient corroboration, a statement may support a warrant regardless of its source." *State* v. *Jackson,* supra, 447, and cases cited therein. As in *Jackson,* the case now before us presents several factors which reasonably support an inference of corroboration. The officer's investigation, the independent statements of Days and Vereen, the information provided by unnamed witnesses[7] as well as the officer's interview with the defendant corroborate the veracity of the independent information

[7] In *United States* v. *Rollins,* 522 F.2d 160, 164 (2d Cir.), cert. denied, 424 U.S. 918, 96 S. Ct. 1122, 47 L. Ed. 2d 324 (1976), the Second Circuit noted: "Specific allegations of reliability or past reliable contact are not required when the informant in question was an eyewitness to the crime. *United States* v. *Burke,* [517 F.2d 377, 380 (2d Cir. 1975)]; *Cundiff* v. *United States,* 501 F.2d 188, 189–190 (8th Cir. 1974); *United States* v. *McCoy,* 478 F.2d 176, 179 (10th Cir.), cert. denied, 414 U.S. 828, 94 S. Ct. 53, 38 L. Ed. 2d 62 (1973); *United States* v. *Bell,* 457 F.2d 1231, 1238–39 (5th Cir. 1972); *McCreary* v. *Sigler,* 406 F.2d 1264, 1269 (8th Cir.), cert. denied, 395 U.S. 984, 89 S. Ct. 2149, 23 L. Ed. 2d 773 (1969). See *United States* v. *Miley,* [513 F.2d 1191, 1204 (2d Cir. 1975)]; *United States* v. *Mahler,* 442 F.2d 1172, 1174–75 (9th Cir.), cert. denied, 404 U.S. 993, 92 S. Ct. 541, 30 L. Ed. 2d 545 (1971)."

provided by each source. Corroborating information is accepted as supporting a magistrate's inference of reliability. *Jones* v. *United States,* 362 U.S. 257, 269–70, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960). "Where information from different sources dovetails, corroboration exists." *State* v. *Jackson,* supra, 448, citing *United States* v. *Crews,* 326 F.2d 755 (4th Cir.), cert. denied, 377 U.S. 955, 84 S. Ct. 1634, 12 L. Ed. 2d 499 (1964).[8] See also *State* v. *Ballas,* 180 Conn. 662, 665–66, 433 A.2d 989 (1980). In making his determination on the issue of probable cause, the magistrate is entitled to rely on the ordinary dictates of common experience and on his own common sense. *Spinelli* v. *United States,* 393 U.S. 410, 415, 419, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *State* v. *Romano,* 165 Conn. 239, 243, 245, 332 A.2d 64 (1973).

In the present case, the magistrate concluded that the affidavit presented probable cause to issue a warrant for the arrest of the defendant. The United States Supreme Court has stated that the magistrate's determination of probable cause should be paid great deference by reviewing courts, *Jones* v. *United States,* supra, 270–71, and that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States* v. *Ven-*

---

[8] The defendant argues that the variance between the affidavit of Mary Days and her testimony at trial requires that her affidavit be disregarded in considering the constitutional sufficiency of the material presented to the magistrate supporting his determination of probable cause. As the defendant admits, this court's review is limited to information brought to the attention of the magistrate. *Whiteley* v. *Warden,* 401 U.S. 560, 565 n.8, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971); *Aguilar* v. *Texas,* 378 U.S. 108, 109, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). Thus, Days' trial testimony cannot be considered regarding the probable cause determination made at the time the warrant was issued.

*tresca,* 380 U.S. 102, 109, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965); see *State* v. *Jackson,* supra, 445. Having reviewed the affidavit presented to the magistrate, we find no reason to challenge his conclusion that probable cause to arrest the defendant was demonstrated.

There is no error.

In this opinion the other judges concurred.