## STATE OF CONNECTICUT *v.* GEORGE HARDWICK
### (2802)

TESTO, HULL and DUPONT, Js.

Argued January 3—decision released May 1, 1984

*Thomas F. Brown,* for the appellant (defendant).

*Katherine J. Lambert,* deputy assistant state's attorney, with whom, on the brief, was *John J. Kelly,* state's attorney, for the appellee (state).

TESTO, J. After a trial to a jury, the defendant was convicted of the crime of assault in the first degree for violation of General Statutes § 53a-59 (a) (1). In his

appeal,[1] the defendant assigns as error (1) the trial judge's conduct toward the defendant's counsel; (2) certain evidentiary rulings; and (3) the trial judge's charge to the jury on the issue of self-defense.

The facts may be summarized as follows: The defendant and the victim, after having been introduced in a telephone conversation in 1980, had contact with each other mostly through letters. She saw him for a second time on January 6, 1982. After she had sexual relations with the defendant on that date, a disagreement ensued between them regarding their future plans and overall relationship. Thereafter, the defendant allegedly attacked the victim with a knife, inflicting stab and slash wounds to the victim's head, neck and hand. From early afternoon until the evening, the defendant drove the victim from Shelton to Ashford. In Ashford, the defendant told the victim to walk to a house and get assistance.

On February 7, 1982, the defendant was arrested and charged with kidnapping in the first degree and assault in the first degree. He was found guilty of the assault charge only and sentenced to a term of twelve years.

I

The defendant claims that the trial court's numerous interruptions, the chastisement of his counsel and the failure to permit his counsel to speak on the record deprived him of his right to a fair trial. We agree.

The function of the court in a criminal trial is to conduct a fair and impartial proceeding. *Glasser* v. *United States,* 315 U.S. 60, 82, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *State* v. *Bember,* 183 Conn. 394, 401, 439 A.2d 387 (1981); see also *Wojculewicz* v. *Cummings,* 145 Conn. 11, 19, 138 A.2d 512, cert. denied, 356 U.S. 969,

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

78 S. Ct. 1010, 2 L. Ed. 2d 1075 (1958). The trial judge must avoid taking an apparent position of advocacy in the case before him. *State* v. *Bember,* supra, 402; *State* v. *Echols,* 170 Conn. 11, 13–14, 364 A.2d 225 (1975). Judges in this state, however, are given wide latitude to comment fairly and reasonably upon evidence received at trial, but the court must refrain from making improper remarks which are indicative of favor or condemnation, or which disparage a defendant before the jury. Id.; see also *La Chase* v. *Sanders,* 142 Conn. 122, 125, 111 A.2d 690 (1955). Even though a judge may take all reasonable steps necessary for the orderly progress of the trial, he must always be cautious and circumspect in his language and conduct. *Cameron* v. *Cameron,* 187 Conn. 163, 169, 444 A.2d 915 (1982).

It is evident from a review of the transcript that a departure from these standards occurred in the trial court. On cross-examination of the victim, the trial judge interrupted counsel for the defendant on many occasions.[2] Where, as in the present case, much of the

---

[2] The following conversations transpired between the trial judge and the defendant's counsel:

"The Court: Haven't you been all over this before?

"[Defendant's Counsel]: I am, Your Honor, but this isn't the same.

"The Court: I hope not. . . .

"[Defendant's Counsel]: My question is 'did you consider yourself—'

"The Court: She answered the question. She said 'not at that time.' . . .

"[Defendant's Counsel]: I say to you that you don't recall this area. You don't know the name of the street—

"The Court: Are you asking her a question?

"[Defendant's Counsel]: Yes, I am asking—I'm making a statement to her.

"The Court: She's answered these questions already.

"[Defendant's Counsel]: I know that, Your Honor. I'm simply trying to ask one question.

"The Court: Ask the one question that you haven't asked, don't go over it again."

The following transpired during a portion of the cross-examination of the victim's mother:

"[Defendant's Counsel]: The question is: On January 10—

"The Court: Excuse me, is that her statement?

"[Defendant's Counsel]: This is a statement—well, it's something that

evidence of the commission of a crime is based upon the testimony of the complainant, the court must allow the defendant a broad latitude on cross-examination. Any undue interference may seriously curtail the legitimate and proper defense of the accused. *State* v. *Gionfriddo,* 154 Conn. 90, 96, 221 A.2d 851 (1966). The repeated interruptions and rebukes of counsel by the trial judge prejudiced the defendant's case, thereby denying him a fair trial. Id., 97.

isn't in evidence. I want to refresh her recollection.

"The Court: You haven't answered my question, Counsellor, if you want to refresh your recollection—

"[Defendant's Counsel]: This is a copy of a hospital record.

"The Court: Well, I don't know how you're going to refresh your recollection from a hospital record. If it's something that she can read to refresh her recollection, that's how you refresh someone's recollection, not by your stating it.

"[Defendant's Counsel]: Well, she hasn't indicated, Your Honor, she doesn't remember so—

"The Court: Now whose words are 'does this refresh your recollection,' yours or mine?

"[Defendant's Counsel]: Pardon?

"The Court: I thought your words—do you want me to play them back?

"[Defendant's Counsel]: No, I'm asking her—

"The Court: Now stop arguing with me now and listen.

"[Defendant's Counsel]: Yes, Your Honor.

"The Court: You're testing her recollection.

"[Defendant's Counsel]: That's right.

"The Court: If it's something that you have in writing, then we'll test her recollection, then you let her read it and see if it refreshes her recollection. If not, how is it going to refresh her recollection?

"[Defendant's Counsel]: May I simply say this, Your Honor, she hasn't indicated that her recollection isn't—she can't recall. So I can't offer—

"The Court: She started to say and you wouldn't let her. You cut her short.

"[Defendant's Counsel]: Well she started talking about how she felt and what not.

"The Court: That what she was saying what you were saying.

"[Defendant's Counsel]: May I have an exception to this, Your Honor?

"The Court: Exception noted."

The following transpired during a portion of the cross-examination of Officer Wayne Rioux:

"[Defendant's Counsel]: Now officer, you're of course, very familiar with that area, correct?

"A. Yes sir.

In addition, the judge made prejudicial statements to the jury, embarassed counsel and denied counsel the right to speak on the record.[3] We find that the court's

---

"Q. I want to show you this photograph and ask you if you recognize what's shown in that photograph?

"A. Yes sir, I do recognize what I see.

"Q. And what's shown in the photograph?

"A. This is a roadway leading to a set of stop signs and the roadway appears to be going straight across the roadway and there's a roadway running left and right at the stop signs. I would believe that's the exit ramp for exit 104 off of 186?

"Q. So it's exit ramp 104 off 186?

"A. On the eastbound side of the highway. I do believe so, yes sir.

"Q. Alright. And do you recognize what's shown in that photograph?

"A. Yes sir, I do.

"The Court: Counsel, he's testifying, again, from photos not in evidence.

"[Defendant's Counsel]: No, I'm just asking him to identify, Your Honor.

"The Court: Well, identify them, you can ask him whether he knows what they are. But you're asking him specifically to say what's in the photograph, that's testifying.

"[Defendant's Counsel]: No, I'm asking—

"The Court: Don't argue with me. That is what it is.

"[Defendant's Counsel]: Yes, Your Honor. I'm asking him—

"The Court: Jury's excused. Do not discuss this matter with each other or accept or receive any information from any outside source. (Jury excused.)

"The Court: There is a proper way to deal with photographic evidence. Now if you're going to enter—you haven't even asked that these matters be marked. And you're asking him to testify and tell you whether it's this-that. Now he's testifying from the exhibit the same as if he were reading something to you. It's not the way to do it. If he can identify it in general, then if you want to offer it and if there's no objection . . . and it's now an exhibit, you could ask him to tell you what everything in that picture is. But until that time, you can't, and I so rule.

"[Defendant's Counsel]: May I be heard, Your Honor?

"The Court: No. That's the rule of the Court.

"[Defendant's Counsel]: Your Honor, may I put something on the record?

"The Court: Counsellor, that is the rule. This is how we conduct our trials."

[3] During the cross-examination of Officer James J. Allen III, the court and the defendant were engaged in the following colloquy:

"Q. So you determine that spot where he would start.

"The Court: Counsellor, that is not the testimony. He brought the dog back, lower from this map at the starting point, and walked with the dog until the dog went into the tracking position. That's the testimony, as I remember it.

"[Defendant's Counsel]: Your Honor, this is cross-examination. I think

remarks and conduct far exceeded the permissible bounds of a judge's function during a trial. The defendant's trial was not a fair one since it was not conducted

I have a right to ask him these questions.

"The Court: You do not have the right to make—

"[Defendant's Counsel]: Then Mr. Kelly doesn't have the right.

"The Court: I've gone through this before. I'm going to excuse the jury. (Jury excused.)

"The Court: No lawyers, during the cross-examination of the witness, get up and make an erroneous statement regarding testimony before the Court and except that, merely because there's no objection by the State, who may or may not care that the judge who is trying the case and controlling the case, has no right to make comments like that. Now I told you this before and I give you another exception, because I believe that the judge has every right and every obligation to control the conduct of the case. And I'm not going to allow counsel to get up and make erroneous statements. If you agree that you are erroneous, then I think you should apologize and re-state your questions instead of arguing with me. Now, I'm sure that's your recollection also. It's been testified to several times. Both on direct and on cross-examination that the trooper went, and I guess on this map it's north, to that spot. He walked with the dog and all of a sudden the dog went into a tracking position. He did not start at that spot. And, I think, for you to make that statement in front of the jury means either you've misunderstood the testimony or there's some other purpose. I so rule and exception is noted. If I'm in error, you, Counsellor, have a right to appeal.

"[Defendant's Counsel]: Alright, Your Honor.

"The Court: Bring the jury back in.

"[Defendant's Counsel]: Your Honor, I'd like to put something on the record.

"The Court: What you've done is on the record.

"[Defendant's Counsel]: No, Your Honor—

"The Court: If I—

"[Defendant's Counsel]: Your Honor, I want to put something on the record. I have the right to put it on the record.

"The Court: Bring the jury back.

"[Defendant's Counsel]: Your Honor, I take exception.

"The Court: Exception noted.

"[Defendant's Counsel]: I would like to put something on the record.

"The Court: You've done what you've done. It's on the record. I'm not arguing with you.

"[Defendant's Counsel]: But you haven't even heard my reasons.

"The Court: I'm not arguing with you, Counsellor.

"[Defendant's Counsel]: But you haven't even heard my reasons.

"The Court: I'm telling you that there is no purpose in giving false information to a witness in front of the jury."

in all material things in substantial conformity to law, before an impartial judge and an unprejudiced jury in the atmosphere of judicial calm. See *Wojculewicz v. Cummings,* supra. We therefore conclude that the trial court's conduct constituted reversible error. Since the defendant must be afforded a new trial, his other claims of error will be reviewed by us.

## II

The second issue raised by the defendant concerns the admission of certain evidence: the color photographs of the victim's head, the tracking-dog evidence and the testimony of a physician based on a hypothetical question.

## A

The trial court, over objections by the defendant, admitted into evidence several photographs of the head of the victim in the emergency room of the hospital. The defendant argues that this evidence should have been excluded because the trooper who took the pictures could not distinguish between blood and disinfectant and, therefore, the photos were not a true representation of the victim's condition.

"The great weight of authority is that photographs, even though gruesome, are admissible in evidence when otherwise properly admitted if they have a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry . . . . A photograph, the tendency of which may be to prejudice the jury, may be admitted in evidence if, in the sound discretion of the court, its value as evidence outweighs its possible prejudicial effect." *State v. Haskins,* 188 Conn. 432, 452–53, 450 A.2d 828 (1982); *State v. LaBreck,* 159 Conn. 346, 351, 269 A.2d 74 (1970).

The state offered the evidence to show the nature, location and extent of the injuries and to give the jury

the best evidence available that this was a serious physical injury[4] rather than merely a physical injury. The prosecution, with its burden of establishing guilt beyond a reasonable doubt, must be given the right to prove every essential element of the crime by the most convincing evidence it is able to produce. *State* v. *Bember,* 183 Conn. 394, 408, 439 A.2d 387 (1981); *State* v. *Piskorski,* 177 Conn. 677, 701–702, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). The trial court exercises a broad discretion in admitting such evidence, and its determination will not be disturbed on appeal unless a clear abuse of that discretion is shown. *State* v. *Piskorski,* supra. Such abuse has not been demonstrated here.

## B

The court, in *State* v. *Wilson,* 180 Conn. 481, 489, 429 A.2d 931 (1980), set forth a four part test which must be shown as a condition precedent to the admissibility of tracking-dog evidence: (1) that the handler was qualified to use the dog; (2) that the dog was trained and accurate in tracking humans; (3) that the dog was placed on the trail where circumstances indicate the alleged party to have been; and (4) that the trail had not become so stale or contaminated as to be beyond the dog's competency to follow it. The testimony of the Connecticut state police canine handler was offered to prove the probable location of where the victim was dropped off in Ashford and the path that she took leading to the residence which offered her assistance. In light of the state's offer of proof as to the qualifications of the canine handler and the trained dog, the circumstances surrounding the tracking of the victim's scent and the time the tracking took place, we cannot say that the trial court abused its discretion in admitting this evidence.

---

[4] Assault in the first degree; General Statutes § 53a-59 (a) (1); requires proof of a serious physical injury.

## C

The defendant further argues that the testimony of physician Hubert S. Bush, Jr., based on a hypothetical question could easily have prejudiced the jury. The question posed to Bush asked whether the victim if left unattended for three to four hours would have bled to death. Bush responded that, "[t]he patient could have fainted and she could have bled further and she might have died from the bleeding."

The admissibility of a hypothetical question calls for the exercise of sound discretion as to whether the question, even though it does not contain all of the facts in evidence, presents the facts in such a manner that they bear a true and fair relationship to each other and to the whole evidence in the case, whether it is not so worded as to be likely to mislead or confuse the jury and, further, whether it is not so lacking as to be without value in the decision of the case. *Healy* v. *White*, 173 Conn. 438, 446–47, 378 A.2d 540 (1977).

The question did not ask Bush to reach a conclusion on the basis of a misleading presentation of the facts. It merely asked him to project the results of a hypothetical situation. We thus conclude that the trial court did not abuse its discretion in admitting the testimony.

## D

The defendant contends that the trial court abused its discretion in refusing to admit certain letters and photos sent by the victim to the defendant as relevant to the victim's motive, bias and prejudice. The question of relevance is to be determined in each criminal case in accordance with reason and judicial experience, and requires the exercise of the court's discretion. *State* v. *Giguere*, 184 Conn. 400, 405–406, 439 A.2d 1040 (1981); *State* v. *Gold*, 180 Conn. 619, 646, 431 A.2d 501,

cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); *State* v. *Wilson,* 178 Conn. 427, 437, 423 A.2d 72 (1979). Reversal of the court's ruling is required only where an abuse of discretion is manifest or where injustice appears to have been done. *State* v. *Tedesco,* 175 Conn. 279, 291, 397 A.2d 1352 (1978).

After an examination of the letters and photographs offered by the defendant, the trial court concluded that they added nothing relevant to the victim's testimony regarding her relationship with the defendant of which the jury was not aware. It is well within the discretion of the trial court to exclude evidence if its relevance is so slight and inconsequential that to admit it would distract attention which should be concentrated on other evidence which bears directly on the vital issues in the case. *State* v. *Gaynor,* 182 Conn. 501, 511, 438 A.2d 749 (1980); *State* v. *Varricchio,* 176 Conn. 445, 450, 408 A.2d 239 (1979). We hold that the trial court did not err in excluding the evidence.

## III

The final claim pursued by the defendant is that the trial court erred in its charge to the jury on the issue of self-defense. Specifically, the defendant argues (1) that the jury was not instructed that the state had to disprove self-defense beyond a reasonable doubt; (2) that the court never attempted to apply any of the conflicting facts to the law in its instructions; and (3) that the court erroneously emphasized a doctor's opinion that the victim's injuries were serious.

## A

The record before us, when viewed in a light most favorable to the defendant's claim, fails to demonstrate that sufficient evidence was presented at trial to require a jury instruction on the defense of self-defense under

General Statutes § 53a-19.[5] The defendant never claimed to have used the knife against the victim in order to defend himself or that deadly force was necessary for him to retreat from her in complete safety. See General Statutes § 53a-19. The state's burden of disproving the defense beyond a reasonable doubt does not attach until the defense is raised at trial. *State* v. *Cassino,* 188 Conn. 237, 243–44, 449 A.2d 154 (1982). Because there was not sufficient evidence submitted by the defendant to warrant an instruction on self-defense, the trial court did not err in refusing to so instruct.

---

[5] General Statutes § 53a-19 reads as follows: "(a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

## B

The degree to which reference to the evidence may be called for in the jury charge lies largely in the discretion of the court. *State* v. *Sumner,* 178 Conn. 163, 171, 422 A.2d 299 (1979); *State* v. *Cari,* 163 Conn. 174, 182, 303 A.2d 7 (1972). In its instructions, the court applied the law to the evidence where it deemed necessary. It stressed that "[t]he accused relies on you to consider carefully his claims to evaluate carefully all the evidence and to render a verdict of not guilty if the facts and the law require such a verdict." Repeatedly, the court charged that the state has the burden of proving each and every element of the crimes charged beyond a reasonable doubt, and that it was the jury's recollection, and not that of the court's which controlled. A review of the court's comments on the evidence in the instructions indicate that the charge was correct in the law, adapted to the factual issues, and sufficient to guide the jury in reaching a verdict. The trial court, therefore, did not err in declining to recite the evidence in more detail. See *State* v. *Sumner,* supra.

## C

The defendant lastly claims that the court in its jury instructions unfairly emphasized the testimony of a doctor as to the seriousness of the victim's injuries. It is well settled that the trial court may, in its discretion, call the attention of the jury to the evidence on any point in issue and comment on the weight of the evidence. *State* v. *Hines,* 187 Conn. 199, 210, 445 A.2d 314 (1982); *State* v. *DeMatteo,* 186 Conn. 696, 705, 443 A.2d 915 (1982). It may comment on the evidence as long as the court does not advise or direct the jury how to decide the case. Id. The court also included in its instructions that expert opinion testimony by the doc-

tor must be scrutinized for its reliability. We do not find that the trial court abused its discretion regarding the doctor's opinion.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.